Filing # 49492260 E-Filed 12/01/2016 11:40:36 AM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

GF DBI II, LLC, GF-DBI III, LLC,
GF-DBI/PNC, LLC, GF-DBI/GMAC, LLC, and
GS DEBT PARTNERS MANAGEMENT, LLC,

        Plaintiffs,

v.

DREAMBUILDER INVESTMENTS, LLC,
DBI MANAGEMENT, LLC, DBI FUND
HOLDINGS, LLC, DBI RESIDENTIAL, LLC,
DBI COINVESTMENT JV IVb, LLC,
DBI COINVESTMENT JV Vb, LLC,
PETER J. ANDREWS, and GREGORY E. PALMER,

        Defendants.

CASE NO.:
DIVISION:

_____/

## COMPLAINT

Plaintiffs GF DBI II, LLC ("GF DBI II"), GF-DBI III, LLC ("GF-DBI III"), GF-DBI/PNC, LLC ("GF-DBI/PNC"), GF-DBI/GMAC, LLC ("GF-DBI/GMAC") and GS DEBT PARTNERS MANAGEMENT, LLC ("GS Debt Partners") (collectively, "Plaintiffs"), by counsel, sue defendants DREAMBUILDER INVESTMENTS, LLC ("DBI"), DBI MANAGEMENT, LLC ("DBI Management"), DBI FUND HOLDINGS, LLC ("DBI Fund Holdings"), DBI RESIDENTIAL, LLC ("DBI Residential"), DBI COINVESTMENT JV IVb, LLC ("DBI JV IVb"), DBI COINVESTMENT JV Vb, LLC ("DBI JV Vb"), PETER J. ANDREWS ("Andrews"), and GREGORY E. PALMER ("Palmer") (collectively, "Defendants" or the "DBI Parties"), and allege as follows:

## JURISDICTION, PARTIES AND VENUE

1.     This Court has jurisdiction over the subject matter of this action because the value of

the matter in controversy exceeds $15,000.00, exclusive of interest and costs.

2.    GF DBI II is a Florida limited liability company with its principal place of business in Hillsborough County, Florida.

3.    GF-DBI III is a Florida limited liability company with its principal place of business in Hillsborough County, Florida.

4.    GF-DBI/PNC is a Florida limited liability company with its principal place of business in Hillsborough County, Florida.

5.    GF-DBI/GMAC is a Florida limited liability company with its principal place of business in Hillsborough County, Florida.

6.    GF DBI II, GF-DBI III, GF-DBI/PNC and GF-DBI/GMAC will be collectively referred to as the "GF Parties."

7.    GS Debt Partners is a Florida limited liability company with its principal place of business in Hillsborough County, Florida.

8.    DBI is a New York limited liability company.

9.    DBI Management is a Delaware limited liability company.

10..   DBI Fund Holdings is a Delaware limited liability company.

11.    DBI Residential is a New York limited liability company.

12.    DBI JV IVb is a Delaware limited liability company.

13.    DBI JV Vb is a Delaware limited liability company.

14.    Andrews is an individual who, upon information and belief, resides in New York.

15.    Palmer is an individual and the manager of each of the DBI Parties.  Upon information and belief, Palmer resides in New Hampshire.

16.    This Court has jurisdiction over Defendants pursuant to §48.193, Florida Statutes,

since they operate, conduct, engage in or carry on a business or business venture in this state, have an office or agency in this state, or breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

17.     Venue of this action is appropriate in Hillsborough County, Florida because, among other things, the causes of action alleged accrued in Hillsborough County, Florida, and the agreements entered into by Defendants provides for venue in Hillsborough County, Florida.

## OPERATIVE FACTS

18.     On December 31, 2013, the GF Parties and the DBI Parties entered into the Amendment to Limited Liability Company Agreements, Servicing Agreements and Loan Documents (the "Agreement"). A copy of the Agreement is attached as **Exhibit A**.

19.     As more fully explained in the Agreement, the DBI Parties defaulted under one or more agreements entered into with the GF Parties and, as of the date of the Agreement, owed Plaintiffs $5,897,036.57.

20.     The GF Parties agreed to forebear enforcing their rights under the agreements in default, and entered into the Agreement in which the DBI Parties agreed to pay the GF Parties the aggregate sum of $4,271,994.65 on or before June 30, 2015, with at least $726,239.09 of such amount to be paid on or before June 30, 2014, and at least $2,306,877.11 in the aggregate to be paid on or before December 31, 2014.

21.     Beginning January 1, 2014, and continuing on the 1st day of each month thereafter, the DBI Parties agreed to pay GS Debt Partners the greater of (a) $50,000, or (b) undisbursed Net Proceeds, as that term is defined in the Agreement, which payments were to be applied to the reduction of the remaining amount due pursuant to the Agreement.

22.     The amounts due to Plaintiffs pursuant to the Agreement have not been paid and

remain outstanding.

23.     In connection with the underlying agreements referenced in the Agreement, Andrews and Palmer each personally guaranteed the performance of the obligations of certain of the DBI Parties, as more fully set forth in the Agreement.

24.     Andrews entered into (a) a Guaranty dated as of March 24, 2011 (the "Andrews March Guaranty"), as amended by a Modification of Joint Venture Agreements dated as of August 22, 2011 (the "Modification"), (b) a Guaranty dated as of August 12, 2011 (the "Andrews August 12 Guaranty)", and (c) a Guaranty dated as of August 22, 2011 (the "Andrews August 22 Guaranty").  The Andrews March Guaranty, as amended by the Modification, the Andrews August 12 Guaranty and the Andrews August 22 Guaranty will be collectively referred to as the "Andrews Guaranties."  Copies of the Andrews Guaranties are attached as composite **Exhibit B**.

25.     Palmer entered into (a) a Guaranty dated as of March 24, 2011 (the "Palmer March Guaranty"), as amended by the Modification, (b) a Guaranty dated as of August 12, 2011 (the "Palmer August 12 Guaranty"), and (c) a Guaranty dated as of August 22, 2011 (the "Palmer August 22 Guaranty").  The Palmer March Guaranty, as amended by the Modification, the Palmer August 12 Guaranty and the Palmer August 22 Guaranty will be collectively referred to as the "Palmer Guaranties."  Copies of the Palmer Guaranties are attached as composite **Exhibit C**.

26.     Pursuant to the Andrews March Guaranty and the Palmer March Guaranty, as an inducement to GF-DBI III to advance funds to DBI, Andrews and Palmer unconditionally guaranteed to GF-DBI III, among other things, that all sums due and payable by DBI will be promptly paid as due and payable.  Each further agreed that their obligations are irrevocable,

absolute and unconditional, and if any sums are not paid promptly when due by DBI, they would immediately pay the amount due.

27.    Pursuant to the Andrews August 12 Guaranty and the Palmer August 12 Guaranty, as an inducement to GF-DBI/PNC to advance funds to DBI JV IVb, Andrews and Palmer unconditionally guaranteed to GF-DBI/PNC, among other things, that all sums due and payable by DBI JV IVb will be promptly paid as due and payable.  Each further agreed that their obligations are irrevocable, absolute and unconditional, and if any sums are not paid promptly when due by DBI JV IVb, they would immediately pay the amount due.

28.    Pursuant to the Andrews August 22 Guaranty and the Palmer August 22 Guaranty, as an inducement to GF-DBI/GMAC to advance funds to DBI JV Vb, Andrews and Palmer unconditionally guaranteed to GF-DBI/GMAC, among other things, that all sums due and payable by DBI JV Vb will be promptly paid as due and payable. Each further agreed that their obligations are irrevocable, absolute and unconditional, and if any sums are not paid promptly when due by DBI JV Vb, they would immediately pay the amount due.

29.    As of the date of the Agreement, the amount due under the Andrews Guaranties and Palmer Guaranties, collectively, is $5,897,036.57.

30.    Pursuant to the Agreement, time is of the essence, and any default shall constitute an immediate default under the underlying agreements, including the Andrews Guaranties and Palmer Guaranties, in which case Plaintiffs can exercise any and all remedies available to them and seek to recover all damages arising from the existing and any future defaults of the underlying agreements, including the Andrews Guaranties and Palmer Guaranties.

31.    All conditions precedent to the institution and maintenance of this action and the granting of the relief requested have been performed, have occurred, or have been waived.

32.    Plaintiffs have engaged the services of counsel to enforce their rights and have agreed to pay their attorneys a reasonable fee for their services rendered, together with reimbursement for costs expended. The Amendment, the Andrews Guaranties and Palmer Guaranties each provide for the recovery of attorneys' fees and costs.

## COUNT I
### Breach of Contract (GF Parties Against the DBI Parties)

33.    The GF Parties repeat and reallege paragraphs 1-32.

34.    The Agreement is a valid and enforceable contract.

35.    The DBI Parties have breached the Agreement by, among other things, failing to comply with its terms including, but not limited to, failing to make the required payments due and payable to the GF Parties.

36.    As a direct and proximate result of the breach, the GF Parties have suffered, and continue to suffer, damages.

WHEREFORE, the GF Parties demand judgment against the DBI Parties, for damages, pre- and post- judgment interest, costs, attorneys' fees, as well as such other and further relief as the Court deems just and appropriate.

## COUNT II
### Breach of Contract (GS Debt Partners Against the DBI Parties)

37.    GS Debt Partners repeats and realleges paragraphs 1-32.

38.    The Agreement is a valid and enforceable contract.

39.    The DBI Parties have breached the Agreement by, among other things, failing to comply with its terms including, but not limited to, failing to make the required payments due and payable to GS Debt Partners.

40.    As a direct and proximate result of the breach, GS Debt Partners has suffered, and

6

continues to suffer, damages.

WHEREFORE, GS Debt Partners demands judgment against the DBI Parties, for damages, pre- and post- judgment interest, costs, attorneys' fees, as well as such other and further relief as the Court deems just and appropriate.

## COUNT III
### Breach of Contract Against Andrews

41.    GF-DBI III, GF-DBI/PNC and GF-DBI/GMAC repeat and reallege paragraphs 1-32.

42.    The Andrews Guaranties are valid and enforceable contracts.

43.    Andrews breached the Andrews Guaranties by, among other things, failing to comply with their terms including, but not limited to, failing to make the required payments due and payable.

44.    As a direct and proximate result of the breaches, GF-DBI III, GF-DBI/PNC and GF-DBI/GMAC have suffered, and continue to suffer, damages.

WHEREFORE, GF-DBI III, GF-DBI/PNC and GF-DBI/GMAC demand judgment against Andrews, for damages, pre- and post- judgment interest, costs, attorneys' fees, as well as such other and further relief as the Court deems just and appropriate.

## COUNT IV
### Breach of Contract Against Palmer

45.    GF-DBI III, GF-DBI/PNC and GF-DBI/GMAC repeat and reallege paragraphs 1-32.

46.    The Palmer Guaranties are valid and enforceable contracts.

47.    Palmer breached the Palmer Guaranties by, among other things, failing to comply with their terms including, but not limited to, failing to make the required payments due and

payable.

48.    As a direct and proximate result of the breaches, GF-DBI III, GF-DBI/PNC and

GF-DBI/GMAC have suffered, and continue to suffer, damages.

WHEREFORE, GF-DBI III, GF-DBI/PNC and GF-DBI/GMAC demand judgment

against Palmer, for damages, pre- and post- judgment interest, costs, attorneys' fees, as well as

such other and further relief as the Court deems just and appropriate.

Dated: December 1, 2016

**BURR & FORMAN, LLP**
201 N. Franklin Street, Suite 3200
Tampa, Florida 33602
Telephone:   (813) 221-2626
Facsimile:    (813) 221-7335

_Daniel P Dietrich_

William J. Schifino, Jr., Esq.
Florida Bar Number 564338
Primary: wschifino@burr.com
Secondary: cwarder@burr.com
Daniel P. Dietrich, Esq.
Florida Bar Number 934461
Primary: ddietrich@burr.com
Secondary: dwhite@burr.com
**Attorneys for Plaintiffs**

# Exhibit A

## AMENDMENT TO LIMITED LIABILITY COMPANY AGREEMENTS, SERVICING AGREEMENTS AND LOAN DOCUMENTS

THIS AMENDMENT is made and entered into as of the 31st day of December, 2013, by and between GF DBI II LLC, a Florida limited liability company ("GF DBI II"), GF-DBI III, LLC, a Florida limited liability company ("GF DBI III"), GF-DBI/PNC, LLC, a Florida limited liability company ("GF DBI/PNC"), GF-DBI/GMAC, LLC, a Florida limited liability company ("GF DBI/GMAC"), Dreambuilder Investments, LLC, a New York limited liability company ("DBI"), DBI Management, LLC, a Delaware limited liability company ("DBI Management"), DBI Fund Holdings, LLC, a Delaware limited liability company ("DBI Fund Holdings"), DBI Residential, LLC, a New York limited liability company ("DBI Residential"), Peter J. Andrews ("Andrews"), Gregory E. Palmer ("Palmer"), DBI Coinvestment JV IIb, LLC, a Delaware limited liability company ("DBI JV IIb"), DBI Coinvestment JV IVb, LLC, a Delaware limited liability company ("DBI JV IVb"), and DBI Coinvestment JV Vb, LLC, a Delaware limited liability company ("DBI JV Vb"), DBI Coinvestor Fund IV, LLC, a Delaware limited liability company ("Fund IV"), DBI-Gries Management LLC, a Delaware limited liability company ("DBI-Gries Management"), DBI-Gries Holdings LLC, a Delaware limited liability company ("DBI-Gries Holdings"), DBI Coinvestor Fund V, LLC, a Delaware limited liability company ("Fund V"), DBI Coinvestor Fund VI, LLC, a Delaware limited liability company ("Fund VI"), and DBI Coinvestor Fund VII, LLC, a Delaware limited liability company ("Fund VII"). In consideration of the mutual covenants and promises set forth in this Modification and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree to the following recitals, terms and conditions:.

1.    **Recitals**

(a)    DBI and GF DBI II are all of the Members of JV IIb, and DBI is the Manager of JV IIb. JV IIb is subject to a Limited Liability Company Agreement dated as of March 11, 2011, as amended by an Amendment thereto dated as of August 12, 2011 (the "JV IIb LLC Agreement"). JV IIb is the sole member of Fund IV and DBI is the Manager of Fund IV. Fund IV is subject to a Limited Liability Company Agreement dated as of March 11, 2011 (the "Fund IV LLC Agreement"). Fund IV is the owner of the beneficial interests in the following pools of distressed residential second lien mortgages: DBO-10552 and DBO-10563 (the "Fund IV Pools"). The Fund IV Pools are serviced by DBI pursuant to an Acquisition and Custodial Services Agreement dated as of March 11, 2011, and Collateral Guidelines dated as of March 11, 2011 (the "Fund IV Servicing Agreements").

(b)    DBI Management and GF DBI III are all of the Members of DBI-Gries Management, and DBI is the Manager of DBI-Gries Management. DBI-Gries Management is subject to a Limited Liability Company Agreement dated as of March 24, 2011, as amended by a Modification of Joint Venture Agreements dated as of August 22, 2011 (the "DBI-Gries Management LLC Agreement").

(c)    DBI-Gries Management and GF DBI III are all of the Members of DBI-Gries Holdings, and DBI-Gries Management is the Manager of DBI-Gries Holdings. DBI-Gries Holdings is subject to a Limited Liability Company Agreement dated as of March

24, 2011, as amended by a Modification of Joint Venture Agreements dated as of August 22, 2011 (the "DBI-Gries Holdings LLC Agreement"). DBI-Gries Holdings is the owner of the beneficial interests in one or more pools of distressed residential second lien mortgages (the "DBI-Gries Pools"). The DBI-Gries Pools are serviced by DBI pursuant to an Acquisition and Servicing Agreement dated as of March 24, 2011, as amended by a Modification of Joint Venture Agreements dated as of August 22, 2011 (the "DBI-Gries Servicing Agreement").

(d)    DBI-Gries Holdings and DBI-Gries Management are the sole members of Fund V and DBI-Gries Management is the Manager of Fund V. Fund V is subject to a Limited Liability Company Agreement dated as of July 21, 2011 (the "Fund V LLC Agreement"). Fund V is the owner of the beneficial interests in the following pools of distressed residential second lien mortgages: DBO-10568 and DBO-10595 (the "Fund V Pools"). The Fund V Pools are serviced by DBI pursuant to an Acquisition and Servicing Agreement dated as of July 20, 2011 (the "Fund V Servicing Agreement").

(e)    DBI is the sole Member and the Managing Member of JV IVb. JV IVb is subject to a Limited Liability Company Agreement dated as of August 12, 2011 (the "JV IVb LLC Agreement"). JV IVb is the sole member of Fund VI and DBI-Gries Management is the Manager of Fund VI. Fund VI is subject to a Limited Liability Company Agreement dated as of August 12, 2011 (the "Fund VI LLC Agreement"). Fund VI is the owner of the beneficial interests in the following pools of distressed residential second lien mortgages: DBO-10599 (the "Fund VI Pools"). The Fund VI Pools are serviced by DBI pursuant to an Acquisition and Servicing Agreement dated as of August 12, 2011 (the "Fund VI Servicing Agreement").

(f)    DBI is the sole Member and the Managing Member of JV Vb. JV Vb is subject to a Limited Liability Company Agreement dated as of August 22, 2011 (the "JV Vb LLC Agreement"). JV Vb is the sole member of Fund VII and DBI-Gries Management is the Manager of Fund VII. Fund VII is subject to a Limited Liability Company Agreement dated as of August 22, 2011 (the "Fund VII LLC Agreement"). Fund VII is the owner of the beneficial interests in the following pools of distressed residential second lien mortgages: DBO-10700 (the "Fund VII Pools"). The Fund VII Pools are serviced by DBI pursuant to an Acquisition and Servicing Agreement dated as of August 22, 2011 (the "Fund VII Servicing Agreement").

(g)    The JV IIb LLC Agreement, the Fund IV LLC Agreement, the DBI-Gries Management LLC Agreement, the DBI-Gries Holdings LLC Agreement, the Fund V LLC Agreement, the Fund VI LLC Agreement and the Fund VII LLC Agreement shall collectively be referred to herein as the "Manager LLC Agreements".

(h)    The JV IVb LLC Agreement and the JV Vb LLC Agreement shall collectively be referred to herein as the "Managing Member LLC Agreements". Together, the Manager LLC Agreements and the Managing Member LLC Agreements shall be referred to herein as the "LLC Agreements".

2

(i)     The Fund IV Servicing Agreements, the DBI-Gries Servicing Agreement, the Fund V Servicing Agreement, the Fund VI Servicing Agreement and the Fund VII Servicing Agreement shall collectively be referred to herein as the "DBI Servicing Agreements".

(j)     GF DBI III is the holder of that certain Straight Line of Credit Promissory Note dated as of March 24, 2011, executed by DBI in favor of GF DBI III in the original principal amount of up to $3,000,000.00 (the "Joint Venture Note"). As of the date of this Agreement, DBI owes GF DBI III $500,000.00 in principal under the Joint Venture Note and as of May 31, 2013, DBI owes GF DBI III accrued interest in the amount of $51,542.25 under the Joint Venture Note, all free of any and all defenses, set offs and counterclaims.

(k)     DBI is also obligated to DBI-Gries Holdings to repay certain Working Capital Loans, as that term is defined in the DBI-Gries Servicing Agreement (the "Working Capital Loans").

(l)     Together, the Joint Venture Note and the Working Capital Loans shall be referred to herein as the "Joint Venture Obligations".

(m)     The Joint Venture Obligations are secured by, *inter alia*, that certain Security Agreement dated as of March 24, 2011, executed by DBI in favor of GF DBI III, that certain Security Agreement dated as of March 24, 2011, executed by DBI Fund Holdings in favor of GF DBI III, that certain Security Agreement dated as of March 24, 2011, executed by DBI Management in favor of GF DBI III, and that certain Security Agreement dated as of March 24, 2011, executed by DBI Residential in favor of GF DBI III, each as amended by that certain Modification of Joint Venture Agreements dated as of August 22, 2011 (the "Joint Venture Security Documents"), encumbering the personal property described therein (the "Joint Venture Collateral").

(n)     The Joint Venture Note, the DBI-Gries Servicing Agreement, the Joint Venture Security Documents and any and all other documents executed in connection with the loan comprising the Joint Venture Obligations or otherwise evidencing any of the Joint Venture Obligations, including, without limitation, that certain Credit Agreement dated as of March 24, 2011, executed by DBI and GF DBI III, as amended by that certain Modification of Joint Venture Agreements dated as of August 22, 2011, together with all renewals, modifications or extensions thereof, shall collectively be referred to herein as the "Joint Venture Loan Documents".

(o)     GF DBI/PNC is the holder of that certain Promissory Note dated as of August 12, 2011, executed by DBI JV IVb in favor of GF DBI/PNC, in the original principal amount of $3,000,000.00 (the "Fund VI Note").

(p)     The Fund VI Note is secured by, *inter alia*, that certain Security Agreement dated as of August 12, 2011, executed by DBI in favor of GF DBI/PNC (the "Fund VI Security Agreement"), encumbering the personal property described therein (the "Fund VI Collateral").

3

(q)    The Fund VI Note, the Fund VI Security Agreement and any and all other documents executed in connection with the loan evidenced by the Fund VI Note, including, without limitation, that certain Credit Agreement dated as of August 12, 2011, executed by DBI JV IVb and GF DBI/PNC, together with all renewals, modifications or extensions thereof, shall collectively be referred to herein as the "Fund VI Loan Documents".

(r)    GF DBI/GMAC is the holder of that certain Promissory Note dated as of August 22, 2011, executed by DBI JV Vb in favor of GF DBI/GMAC, in the original principal amount of $3,076,000.00 (the "Fund VII Note").

(s)    The Fund VII Note is secured by, *inter alia*, that certain Security Agreement dated as of August 22, 2011, by DBI in favor of GF DBI/GMAC (the "Fund VII Security Agreement"), encumbering the personal property described therein (the "Fund VII Collateral").

(t)    The Fund VII Note, the Fund VII Security Agreement and any and all other documents executed in connection with the loan evidenced by the Fund VII Note, including, without limitation, that certain Credit Agreement dated as of August 22, 2011, executed by DBI JV Vb and GF DBI/GMAC, together with all renewals, modifications or extensions thereof, shall collectively be referred to herein as the "Fund VII Loan Documents".

(u)    Andrews has personally guaranteed the performance of the obligations evidence by the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents pursuant to (i) a Guaranty dated as of March 24, 2011, as amended by a Modification of Joint Venture Agreements dated as of August 22, 2011, (ii) a Guaranty dated as of August 12, 2011, and (iii) a Guaranty dated as of August 22, 2011, respectively (collectively, the "Andrews Guaranties").

(v)    Palmer has personally guaranteed the performance of the obligations evidence by the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents pursuant to (i) a Guaranty dated as of March 24, 2011, as amended by a Modification of Joint Venture Agreements dated as of August 22, 2011, (ii) a Guaranty dated as of August 12, 2011, and (iii) a Guaranty dated as of August 22, 2011, respectively (collectively, the "Palmer Guaranties"; collectively, the Andrews Guaranties and the Palmer Guaranties shall be referred to herein as the "Guaranties").

(w)    All obligations under the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents are cross-collateralized and cross-defaulted pursuant to a Cross-Collateralization and Cross-Default Agreement dated as of August 22, 2011.

(x)    GS Debt Partners Management, LLC, a Florida limited liability company ("GS Debt Partners") is the Manager of each of GF DBI II, GF DBI III, GF DBI/PNC and GF DBI/GMAC (collectively, GF DBI II, GF DBI III, GF DBI/PNC and GF DBI/GMAC shall be referred to herein as the "GF Parties").

4

(y)    DBI, DBI Management, DBI Fund Holdings, DBI Residential, Andrews and Palmer shall collectively be referred to herein as the "DBI Parties".

(z)    One or more of the DBI Parties are in default under one or more of the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents.  As of the date of this Amendment, the DBI Parties owe the GF Parties $5,897,036.57, which amount continues to accrue interest in accordance with the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents.

(aa)    Notwithstanding such default, the GF Parties have agreed to forebear from enforcing their rights under the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents as set forth herein.

2.    **Settlement Amount**.  The DBI Parties hereby agree to pay the GF Parties the aggregate sum of $4,271,994.65 (the "Settlement Amount") on or before June 30, 2015 (the "Payment Deadline"), with at least $726,239.09 of such amount to be paid on or before June 30, 2014, and at least $2,306,877.11 in the aggregate to be paid on or before December 31, 2014.  Beginning on January 1, 2014, and continuing on the 1st day of each month thereafter, the DBI parties shall pay GS Debt Partners the greater of (a) $50,000.00, or (b) undisbursed Net Proceeds (as defined below), which payments shall be applied to the reduction of the remaining Settlement Amount due hereunder.  All payments hereunder shall be allocated among the GF Parties at the discretion of GS Debt Partners.

3.    **Net Proceeds**.  "Net Proceeds" shall mean (a) any proceeds arising from any mortgage loan that is beneficially owned by any of Fund IV, DBI-Gries Holdings, Fund V, Fund VI or Fund VII, whether separately or in a pool with other mortgage loans, including, without limitation, proceeds from collections arising from such mortgage loan, the sale of such mortgage loan or the sale of collateral securing such mortgage loan, minus (b) actual documented reasonable and customary direct expenses of obtaining such proceeds.  DBI and DBI-Gries Management jointly and severally agree that they shall, in their respective capacities as the Servicer under any of the DBI Servicing Agreements, Manager under any of the Manager LLC Agreements, Managing Member under any of the Managing Member LLC Agreements, or otherwise, hold all Net Proceeds in trust for the benefit of the GF Parties, and shall pay such Net Proceeds to GS Debt Partners immediately upon request to be applied against the Settlement Amount, with appropriate credit given in connection with the next monthly Settlement Amount payment due under Section 2 above.

4.    **Termination of DBI Obligations**.  Upon the payment in full of the Settlement Amount as set forth above, all obligations of the DBI Parties in favor of the GF Parties under the LLC Agreements, the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents shall terminate.

5.    **Guaranty Obligations**.  As of the date of this Amendment, the amount due under the Guaranties is $5,897,036.57, which amount continues to accrue interest in accordance with the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents.  Each payment hereunder shall reduce the obligations owed under the Guaranties on

a dollar for dollar basis.  Upon the payment in full of the Settlement Amount as set forth above, all obligations under the Guaranties shall terminate.

6.    **Past Distributions to GF DBI II and GF DBI III**.  Past distributions to GF DBI II under the JVIIb LLC Agreement or to GF DBI III under the DBI-Gries Management LLC Agreement or the DBI-Gries Holdings LLC Agreement shall be recast to reflect the payment first of a preferred return of three percent (3%) per annum, with any remaining distributions being deemed a return of capital contributions.  DBI and DBI-Gries Management shall file amended tax returns reflecting the foregoing.

7.    **Cross-Default; Removal of DBI as Manager; Termination of Servicing Agreements**.  Any default by DBI, DBI-Gries Management or any other DBI Party with respect to any of their respective obligations as set forth in this Amendment, time being of the essence, or any other event of default or any event which, upon notice or lapse of time or both, would constitute an event of default, under any of the LLC Agreements, DBI Servicing Agreements, Joint Venture Loan Documents, Fund VI Loan Documents or Fund VII Loan Documents shall also constitute:

   (a)    cause for the immediate removal of DBI as Manager of JV IIb, to be replaced by GS Debt Partners;

   (b)    cause for the immediate removal of DBI as Manager of Fund IV, to be replaced by GS Debt Partners;

   (c)    cause for the immediate removal of DBI as Manager of DBI-Gries Management, to be replaced by GS Debt Partners;

   (d)    cause for the immediate removal of DBI-Gries Management as Manager of DBI-Gries Holdings, to be replaced by GS Debt Partners;

   (e)    cause for the immediate removal of DBI-Gries Management as Manager of Fund V, to be replaced by GS Debt Partners;

   (f)    cause for the immediate removal of DBI as Managing Member of JV IVb, to be replaced by GS Debt Partners as the designee of DBI;

   (g)    cause for the immediate removal of DBI-Gries Management as Manager of Fund VI, to be replaced by GS Debt Partners;

   (h)    cause for the immediate removal of DBI as Managing Member of JV Vb, to be replaced by GS Debt Partners as the designee of DBI;

   (i)    cause for the immediate removal of DBI-Gries Management as Manager of Fund VII, to be replaced by GS Debt Partners;

   (j)    cause for the immediate termination by Fund IV of the Fund IV Servicing Agreements;

(k)    cause for the immediate termination by DBI-Gries Holdings of the DBI-Gries Holdings Servicing Agreement;

(l)    cause for the immediate termination by Fund V of the Fund V Servicing Agreement;

(m)    cause for the immediate termination by Fund VI of the Fund VI Servicing Agreement;

(n)    cause for the immediate termination by Fund VII of the Fund VII Servicing Agreement; and

(o)    an immediate default under the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents, including, without limitation, the Andrews Guaranties and the Palmer Guaranties.

Upon any such default, the GF Parties may exercise any and all remedies available to them and seek to recover all damages arising from the existing and any future defaults by the DBI Parties under the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents, including recovery under the Andrews Guaranties and the Palmer Guaranties, with credit given for any payments received hereunder.

8.    **Releases and Waivers.** The DBI Parties, jointly and severally, for themselves, their successors and assigns, and for any other person or entity claiming by, through or under them, do hereby fully, irrevocably and unconditionally remise, release, acquit and forever discharge the GF Parties of and from, and do hereby fully, irrevocably and unconditionally waive, any and all rights, claims, demands, damages, actions, causes of action and defenses, of any nature whatsoever, whether arising under an express or implied contract or by operation of law, and whether arising at law or in equity, which any of the DBI Parties had, may now have, or may hereafter have against any of the GF Parties by reason of any transaction, act, omission, event, happening or thing whatsoever, from the beginning of time, occurring prior to and including the date of this Amendment, including, without limitation, in connection with or arising out of the transactions evidenced by the LLC Agreements, the DBI Servicing Agreements, the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents.

9.    **Amendment of Agreements.** Each of the LLC Agreements, the DBI Servicing Agreements, the Joint Venture Loan Documents, the Fund VI Loan Documents and the Fund VII Loan Documents (collectively, the "Amended Agreements") are hereby amended to reflect the provisions of this Amendment pertaining thereto. Except as modified by this Amendment, the Amended Agreements remain unchanged and in full force and effect.

10.    **Miscellaneous.**

(a)    No delay or omission of any party to exercise any right, power or remedy accruing upon any event of default shall exhaust or impair any such right, power or remedy or shall be construed to waive any event of default or to constitute acquiescence therein.

7

(b)     Whenever one of the parties hereto is named or referred to herein, the successors and assigns of such party shall be included, and all covenants and agreements contained in this Amendment shall bind and inure to the benefits of their respective successors and assigns, whether or not so expressed.

(c)     In the event that any of the covenants, agreements terms or provisions contained in the this Amendment shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained in this Amendment shall be in no way affected, prejudiced or disturbed thereby.

(d)     In the event of a dispute arising under this Amendment or any of the Amended Agreements, whether or not a lawsuit or other proceeding is filed, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs, including attorney's fees and costs incurred in litigating entitlement to attorney's and costs, as well as in determining or quantifying the amount of recoverable attorney's fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including, but not limited to, costs of investigation, copying costs, electronic discovery costs, telephone charges, mailing and delivery charges, consultant and expert witness fees, and mediator fees, regardless of whether such costs are taxable.

(e)     This Amendment may not be amended except by written instrument executed by the parties hereto.

(f)     This Amendment may be executed in multiple counterparts, each of which shall be considered to be an original agreement, but all of which, when taken together, shall constitute one and the same agreement.  Signatures may be evidenced by facsimile transmissions.

w

**[SIGNATURES ON THE FOLLOWING PAGES]**

8

The GF Parties have executed this Agreement as of the date first written above.

**GF DBI II, LLC**

By: *GS Debt Partners Management, LLC,*
   its Manager

By: _____
   Robert D. Gries, Jr., its Manager

**GF-DBI III LLC**

By: *GS Debt Partners Management, LLC,*
   its Manager

By: _____
   Robert D. Gries, Jr., its Manager

**GF-DBI/PNC, LLC**

By: *GS Debt Partners Management, LLC,*
   its Manager

By: _____
   Robert D. Gries, Jr., its Manager

**GF-DBI/GMAC, LLC**

By: *GS Debt Partners Management, LLC,*
   its Manager

By: _____
   Robert D. Gries, Jr., its Manager

STATE OF FLORIDA              )
COUNTY OF HILLSBOROUGH        )

The foregoing instrument was acknowledged before me this 24th day of January, 2014, by Robert D. Gries, Jr., in his capacity as Manager of GS Debt Partners Management, LLC, a Florida limited liability company, in its capacity as (a) Manager of GF DBI II LLC, a Florida limited liability company, (b) Manager of GF-DBI III, LLC, a Florida limited liability company, (c) Manager of GF-DBI/PNC, LLC, a Florida limited liability company, and (d) Manager of GF-DBI/GMAC, LLC, a Florida limited liability company. He [✓] is personally known to me or [_] produced a valid driver's license as identification.

KELLY N. BECKER
Notary Public, State of Florida
My Comm. Expires Jan. 10, 2018
No. FF79042

_____
Signature of Notary Public

_____
Notary's Printed Name
Kelly N. Becker

My Commission Expires: 1|10|18

9

The DBI Parties have executed this Agreement as of the date first written above.

**Dreambuilder Investments, LLC**

By: _____
Gregory E. Palmer, its Manager

**DBI Management, LLC**

By: _____
Gregory E. Palmer, its Manager

**DBI Fund Holdings, LLC**

By: _____
Gregory E. Palmer, its Managing Member

**DBI Residential, LLC**

By: _____
Gregory E. Palmer, its Managing Member

_____
Peter J. Andrews

_____
Gregory E. Palmer

**DBI Coinvestment JV IIb, LLC**

By: Dreambuilder Investments, LLC,
      its Managing Member

By: _____
Gregory E. Palmer, its Manager

**DBI Coinvestment JV IVb, LLC**

By: Dreambuilder Investments, LLC,
      its Manager

By: _____
Gregory E. Palmer, its Manager

**DBI Coinvestment JV Vb, LLC**

By: Dreambuilder Investments, LLC,
      its Managing Member

By: _____
Gregory E. Palmer, its Manager

**DBI Coinvestor Fund IV, LLC**

By: Dreambuilder Investments, LLC,
      its Manager

By: _____
Gregory E. Palmer, its Manager

10

**DBI-Gries Management LLC**

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

**DBI-Gries Holdings LLC**

By: DBI-Gries Management LLC,
    its Manager

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

**DBI Coinvestor Fund V, LLC**

By: DBI-Gries Management LLC,
    its Manager

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

**DBI Coinvestor Fund VI, LLC**

By: DBI-Gries Management LLC,
    its Manager

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

**DBI Coinvestor Fund VII, LLC**

By: DBI-Gries Management LLC,
    its Manager

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

11

STATE OF _New Hampshire_       )
COUNTY OF _Rockingham_       )

    The foregoing instrument was acknowledged before me this ____ day of January, 2014, by Gregory E. Palmer, individually and in his capacity as (a) Manager of DBI Management, LLC, a Delaware limited liability company, (b) Managing Member of DBI Fund Holdings, LLC, a Delaware limited liability company, (c) Managing Member of DBI Residential, LLC, a New York limited liability company and (d) Manager of Dreambuilder Investments, LLC, a New York limited liability company, in its individual capacity and in its capacity as (1) Managing Member of DBI Coinvestment JV IIb, LLC, a Delaware limited liability company, (2) Managing Member of DBI Coinvestment JV IVb, LLC, a Delaware limited liability company, (3) Managing Member of DBI Coinvestment JV Vb, LLC, a Delaware limited liability company, (4) Manager of DBI Coinvestor Fund IV, LLC, a Delaware limited liability company, and (5) Manager of DBI-Gries Management LLC, a Delaware limited liability company, in its individual capacity and in its capacity as (i) Manager of DBI-Gries Holdings LLC, a Delaware limited liability company, (ii) Manager of DBI Coinvestor Fund V, LLC, a Delaware limited liability company, (iii) Manager of DBI Coinvestor Fund VI, LLC, a Delaware limited liability company, (iv) Manager of DBI Coinvestor Fund VII, LLC, a Delaware limited liability company. He [_] is personally known to me or [_] produced a valid driver's license as identification.

Signature of Notary Public

_Christopher Scatamacchia_
Notary's Printed Name

My Commission Expires: 5/23/19

STATE OF _New Hampshire_       )
COUNTY OF _Rockingham_       )

    The foregoing instrument was acknowledged before me this 22nd day of January, 2014, by Peter J. Andrews. He [_] is personally known to me or [X] produced a valid driver's license as identification.

Signature of Notary Public

_Christopher Scatamacchia_
Notary's Printed Name

My Commission Expires: 5/23/27

# Exhibit
# B

## GUARANTY

THIS AGREEMENT is dated as of March 24, 2011, by Peter J. Andrews ("Guarantor"), whose mailing address is 1 West Street, Apartment 2436, New York, New York 10004.

### WITNESSETH:

That for and in consideration and as an inducement to Gries DBI III, LLC, a Florida limited liability company ("Lender"), to advance funds (hereinafter the "Loan"), to Dreambuilder Investments, LLC, a New York limited liability company ("Borrower"), in the amount of up to Three Million and No/100 Dollars ($3,000,000.00) pursuant to that certain Straight Line of Credit Promissory Note (the "Note"), Credit Agreement (the "Credit Agreement") and other Loan Documents (as defined in the Credit Agreement), all of even date herewith by and between Lender and Borrower, Guarantor agrees as follows:

1.    Guarantor hereby unconditionally guarantees to Lender and to each holder from time to time of the Note that all sums stated in the Note to be payable by Borrower will be promptly paid as due and payable (whether at the time of payment of any interest or principal amount or at maturity or at any date fixed for prepayment or by acceleration thereof or otherwise) in accordance with the provisions thereof, and that Borrower will perform and observe each and every covenant, agreement, term and condition in the Credit Agreement or any other Loan Documents to be performed or observed by Borrower.  This Guaranty shall be irrevocable, and in all events shall be unconditional and absolute, and if for any reason any such sums, or any part thereof, shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to and in accordance with the provisions of the Note and the Credit Agreement, regardless of any defenses or rights of set-off or counterclaim which Borrower may have or assert, regardless of whether Lender shall have taken any steps to enforce any rights against Borrower or any other person to collect such sum, or any part thereof, and regardless of any other condition or contingency.  Guarantor also agrees to pay to such person such further amount as shall be sufficient to cover the cost and expense of collecting such sums, or part thereof, or of otherwise enforcing this Guaranty, including, in any case, reasonable compensation to its attorneys for all services rendered in that connection.  Upon Borrower's failure to perform or observe any covenant, agreement, term or condition in the Note, the Credit Agreement or any other Loan Document to be performed or observed by Borrower, Guarantor will promptly perform and observe the same or cause the same promptly to be performed or observed.

1.    The obligations of Guarantor hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of Guarantor hereunder shall not be released, discharged or terminated or in any other way affected or impaired by, any circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof, including, without limitation (a) any amendment or modification of or addition or supplement to the Note, the Credit Agreement or any other Loan Document; (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect of the Note, the Credit Agreement or any other Loan Document; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Note, the Credit Agreement or any other Loan Document; (d) any

exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Guaranty, the Note, the Credit Agreement or any other Loan Document; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person or entity, or any disposition by Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation or similar proceeding involving or affecting Borrower; (g) any partial prepayment, assignment or transfer of the Note; (h) any limitation of Borrower' liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part, of any of the terms of the Note; or (i) any other circumstances whatsoever.

2.      Guarantor unconditionally waives any right Guarantor may have to (a) all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of any holder of the Note against Guarantor, including, without limitation, notice to Borrower of default, presentment to and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to proceed against Borrower, (c) require Lender to proceed against or exhaust any security granted by Borrower, or (d) require Lender to pursue any other remedy within the power of Lender, and Guarantor agrees that all of Guarantor's obligations under this Guaranty are independent of the obligations of Borrower and that a separate action may be brought against Guarantor whether or not an action is commenced against Borrower.

3.      Guarantor shall pay all fees (including reasonable attorneys' fees and costs), costs and expenses, of any nature whatsoever, including but not limited to costs, fees and expenses incurred in connection with appellate, collection and bankruptcy proceedings, incurred by Lender or any holder of the Note in connection with enforcing this Guaranty or with any transaction referred to herein. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby.

4.      LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY.

5.      In the event that for any reason whatsoever Borrower are now or hereafter become indebted to Guarantor, Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien and in all other respects to all obligations of Borrower to Lender which are covered by this Guaranty, and that Guarantor, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, shall not be entitled to enforce or receive payment thereof until all sums then due and owing to Lender shall have been paid in full. If, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, any payment shall have been made to Guarantor by Borrower on any said indebtedness during any time that there are obligations outstanding from Borrower to Lender which are covered by this Guaranty, Guarantor shall hold in trust all such

payments for the benefit of Lender and shall make said payments to Lender to be credited and applied against obligations of Borrower to Lender, whether matured or unmatured, in accordance with the discretion of Lender.

7. If at any time all or any part of any payment theretofore applied by Lender to any obligations hereby guaranteed is or must be rescinded or returned by Lender for any reason whatsoever (including without limitation the insolvency, bankruptcy or reorganization of Borrower), such indebtedness shall for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such indebtedness as though such application by Lender had not been made.

8. This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

9. This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Florida, without reference to the choice of laws rules of any jurisdiction.

Guarantor has executed this Guaranty as of the date first above written.

Peter J. Andrews

STATE OF ___New York___ )
COUNTY OF ___New York___ )

The foregoing instrument was acknowledged before me this 23rd day of March, 2011, by Peter J. Andrews. He is personally known to me or produced ___NJ Driver's License___ as identification.

Notary Public, State of ___New York___

**ROBERTA ARNONE, ESQ.**
Notary's Printed Name

My Commission Expires: May 22, 2011

3

## MODIFICATION OF JOINT VENTURE AGREEMENTS

THIS MODIFICATION OF JOINT VENTURE AGREEMENTS (this "Modification") is made and entered into as of the 22nd day of August, 2011, by and between by GF-DBI III, LLC, a Florida limited liability company ("GF DBI"), Dreambuilder Investments, LLC, a New York limited liability company ("DBI"), DBI Management, LLC, a Delaware limited liability company ("DBI Management"), DBI Fund Holdings, LLC, a Delaware limited liability company ("DBI Fund Holdings"), DBI Residential, LLC, a New York limited liability company ("DBI Residential"), Peter J. Andrews ("Andrews"), Gregory E. Palmer ("Palmer"), DBI-Gries Management LLC, a Delaware limited liability company ("DBI-Gries Management"), and DBI-Gries Holdings LLC, a Delaware limited liability company ("DBI-Gries Holdings"). In consideration of the mutual covenants and promises set forth in this Modification and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree to the following recitals, terms and conditions:

1    Recitals.

1.1    The parties to this Modification are parties to one or more of those certain agreements comprising a joint venture between GF DBI and DBI for the purpose of acquiring, servicing and liquidating pools of defaulted residential loans secured by second mortgages (the "Joint Venture"), including, without limitation the following:

1.1.1    Limited Liability Company Agreement of DBI-Gries Holdings LLC dated as of March 24, 2011, executed by GF DBI, DBI-Gries Management, DBI-Gries Holdings and DBI (the "Holdings LLC Agreement");

1.1.2    Limited Liability Company Agreement of DBI-Gries Management LLC dated as of March 24, 2011, executed by GF DBI, DBI Management, DBI-Gries Management and DBI (the "Management LLC Agreement");

1.1.3    Acquisition and Servicing Agreement dated as of March 24, 2011, executed by DBI-Gries Holdings and DBI (the "Acquisition and Servicing Agreement");

1.1.4    Credit Agreement dated as of March 24, 2011, executed by DBI and GF DBI (the "Credit Agreement");

1.1.5    Guaranty dated as of March 24, 2011, executed by Andrews in favor of GF DBI (the "Andrews Guaranty");

1.1.6    Guaranty dated as of March 24, 2011, executed by Palmer in favor of GF DBI (the "Palmer Guaranty");

1.1.7    Security Agreement dated as of March 24, 2011, executed by DBI and GF DBI (the "DBI Security Agreement");

1.1.8   Security Agreement dated as of March 24, 2011, executed by DBI Fund Holdings and GF DBI (the "DBI Fund Holdings Security Agreement");

1.1.9   Security Agreement dated as of March 24, 2011, executed by DBI Management and GF DBI (the "DBI Management Security Agreement"); and

1.1.10   Security Agreement dated as of March 24, 2011, executed by DBI Residential and GF DBI (the "DBI Residential Security Agreement").

The foregoing agreements, together with all other agreements entered into in connection with the Joint Venture, shall be referred to collectively as the "Joint Venture Agreements"). Capitalized terms not otherwise defined in this Modification shall have the meaning assigned them in the Joint Venture Agreements.

1.2     The parties to this Amendment have agreed to certain modifications of the Joint Venture Agreements with respect to certain matters, as set forth below.

2       Holdings LLC Agreement.

2.1     Section 4.2(b)(i).  Section 4.2(b)(i) of the Holdings LLC Agreement is hereby modified to read in its entirety as follows:

(i)     First, to GF DBI until such time as GF DBI has received cumulative distributions pursuant to this subparagraph 4.2(b)(i) on account of such Mortgage Loan Pool in an amount equal to (1) the aggregate amount of Capital Contributions made by GF DBI on account of such Mortgage Loan Pool (other than for the Working Capital Loan related to that Mortgage Loan Pool), plus (2) an annualized return of Fifteen percent (15%) on outstanding capital; and

2.2     Section 7.4.  Section 7.4 of the Holdings LLC Agreement is hereby modified to read in its entirety as follows:

SECTION 7.4.  *Liquidation Shortfall Payment by DBI.*  In the event that, after application and distribution of proceeds of liquidation as set forth in Section 7.3 of this Agreement and as set forth in Section 7.3 of the Management LLC Agreement, the sum of cumulative distributions to GF DBI under this Agreement plus cumulative distributions made to GF DBI under the Management LLC Agreement are less than GF DBI's cumulative capital contributions hereunder plus an annualized return of Fifteen percent (15%), DBI shall pay the difference to GF DBI within thirty (30) days after written demand therefor.

2.3   Fund V Working Capital Loan.  On or about July 22, 2011, DBI-Gries Holdings funded the purchase of Mortgage Loan Pools through DBI Coinvestor Fund V, LLC, a Delaware limited liability company ("Fund V"), which is a Subsidiary under the Holdings LLC Agreement.  DBI and DBI-Gries Holdings agree that $750,000.00 of such funding is a Working Capital Loan and shall be repaid by DBI in accordance with the terms of the Acquisition and Servicing Agreement.

2.4   Funding Cutoff Date; No Further Capital Contributions.   The Funding Cutoff Date referred to in Section 3.1(b) of the Holdings LLC Agreement shall be deemed to be the date of this Modification.  GF DBI shall have no further obligation to make capital contributions of any kind under the Holdings LLC Agreement or otherwise in connection with the Joint Venture.

2.5   Section 10.4(b).  Section 10.4(b) of the Holdings LLC Agreement is hereby modified to delete the requirement that annual financial statements be audited and instead to require that such financial statements be reviewed in accordance with agreed upon procedures.

2.6   Section 3.2.  Section 3.2 of the Management LLC Agreement is hereby modified to delete the requirement that DBI-Gries Management be the Manager of any Subsidiary formed to purchase Mortgage Loan Pools after the date of this Agreement.

3   Management LLC Agreement.

3.1   Section 4.2(a).  Section 4.2(a) of the Management LLC Agreement is hereby modified to reflect that, subject to Section 4.2(b) of the Management LLC Agreement (as modified herein), GF DBI shall not be entitled to distributions with respect to any Mortgage Loan Pools purchased by DBI-Gries Holdings after the date of this Agreement. DBI, as Manager of DBI-Gries Management, shall adjust allocations of Net Profits and Net Losses to reflect the allocation of any such distributions.

3.2   Section 4.2(b).  Section 4.2(b) of the Management LLC Agreement is hereby modified to read in its entirety as follows:

(b)   Notwithstanding the foregoing, any distributions payable to DBI Management shall be paid to GF DBI under either of the following circumstances: (i) DBI fails to timely pay in full all outstanding principal and accrued interest on any Working Capital Loan on or after the applicable Working Capital Loan Maturity Date, as described in Section 3.1(c) of the Acquisition and Servicing Agreement; or (ii) DBI fails to timely pay in full any installment of accrued interest after the Advance Cutoff Date or to repay all principal and accrued interest on the Loan Maturity Date, as described in Section 2.5 of the Credit Agreement of even date between GF DBI and DBI.

3.3   Section 5.1. Section 5.1 of the Management LLC Agreement is hereby modified to read in its entirety as follows:

3

SECTION 5.1.    *Manager.*    The Manager of the Company (the "Manager") shall be DBI.

3.4    <u>Section 5.8(a)(vii)</u>.    Section 5.8(a)(vii) of the Management LLC Agreement is hereby modified to read in its entirety as follows:

(vii)    the occurrence of any default by the Company under the Holdings LLC Agreement or the LLC operating agreement of any Subsidiary, as determined by GF DBI, that remains uncured after the expiration of any cure period provided therein; or

3.5    <u>Section 10.4(b)</u>.    Section 10.4(b) of the Management LLC Agreement is hereby modified to delete the requirement that annual financial statements be audited and instead to require that such financial statements be reviewed in accordance with agreed upon procedures.

4    <u>Acquisition and Servicing Agreement</u>.

4.1    <u>Section 9.1</u>.    Section 9.1 of the Acquisition and Servicing Agreement is hereby deleted in its entirety.

4.2    <u>Section 9.2</u>.    Section 9.2 of the Acquisition and Servicing Agreement is hereby deleted in its entirety.

4.3    <u>Section 9.3</u>.    Section 9.3 of the Acquisition and Servicing Agreement is hereby deleted in its entirety.

5    <u>Credit Agreement</u>.

5.1    <u>No Further Advances</u>.    GF DBI shall have no further obligation to make any advances under Section 2.3 of the Credit Agreement or otherwise in connection with the loan evidenced by the Credit Agreement.

5.2    <u>Section 2.5</u>.    Section 2.5 of the Credit Agreement is hereby modified to read in its entirety as follows:

2.5    **Repayment.**    Interest shall be payable as provided in the Note. The outstanding principal balance due under the Note shall be paid on or before July 1, 2012 (the "<u>Loan Maturity Date</u>"). If Borrower fails to timely pay in full any installment of accrued interest after the Advance Cutoff Date or to repay all principal and accrued interest on the Loan Maturity Date, Lender shall, in addition to any other remedy available to Lender hereunder, be entitled to payment of any such shortfall out of distributions otherwise payable to DBI Management under the Management LLC Agreement.

5.3    <u>Security Agreements</u>.    The definition of Security Agreements in Section 1.1 of the Credit Agreement is hereby modified to read in its entirety as follows:

4

"Security Agreements" means the Security Agreements of even date executed by Borrower, DBI Fund Holdings, DBI Management and DBI Residential in favor of Lender, as they may be amended, renewed, increased, restated, replaced, or otherwise modified from time to time.

6    Andrews Guaranty.  The Andrews Guaranty is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional obligations guarantied thereby.

7    Palmer Guaranty.  The Palmer Guaranty is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional obligations guarantied thereby.

8    DBI Security Agreement.

8.1    Section 2.2.  Section 2.2 of the DBI Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

8.2    Section 4(a).  Section 4(a) of the DBI Security Agreement is hereby modified to read in its entirety as follows:

(a)    Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests. After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

9    DBI Fund Holdings Security Agreement.

9.1    Section 2.2.  Section 2.2 of the DBI Fund Holdings Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

9.2    Section 4(a).  Section 4(a) of the DBI Fund Holdings Security Agreement is hereby modified to read in its entirety as follows:

(a)    Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests. After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

10     <u>DBI Management Security Agreement</u>.

10.1     <u>Section 2.2</u>. Section 2.2 of the DBI Management Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

10.2     <u>Section 4(a)</u>. Section 4(a) of the DBI Management Security Agreement is hereby modified to read in its entirety as follows:

       (a)     Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests. After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

11     <u>DBI Residential Security Agreement</u>.

11.1     <u>Section 2.2</u>. Section 2.2 of the DBI Residential Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

11.2     <u>Section 4(a)</u>. Section 4(a) of the DBI Residential Security Agreement is hereby modified to read in its entirety as follows:

       (a)     Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests. After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

12     <u>Participation Right</u>. DBI hereby agree that GF DBI (or a designated affiliate thereof) shall have the right to participate (at a level to be mutually agreed upon by DBI and GF DBI in good faith) in any future purchase of mortgage pools or similar investment opportunity in which DBI is an affiliate, investor, manager, promoter or servicer within three (3) years of the date of this Modification. GF DBI shall have twenty (20) business days after written notification of such a transaction within which to exercise its right to participate by written notice to DBI, failing which GF DBI's right to participate in that investment opportunity shall terminate. The written notification to GF DBI of the transaction shall provide sufficiently detailed information concerning the investment terms (including, without limitation, a proposed participation level) to reasonably allow GF DBI to make its determination whether to participate. The rights granted pursuant to this paragraph shall survive the termination of the Joint Venture.

13     <u>"Most Favored Nation" Provision</u>. In the event that DBI, or any affiliate of DBI, provides a third party investor in pools of defaulted residential loans secured by second mortgages with economic terms more favorable than those provided to GF DBI under the Joint

Venture, DBI shall execute any agreements necessary to extend such more favorable terms to GF DBI under the Joint Venture within fifteen days of GF DBI's request therefor.

14    <u>Counterparts and Electronic Signatures.</u>    This Modification may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument. The parties may execute and deliver this Modification by forwarding by electronic means, copies of this Modification showing execution by the parties sending the same, and the parties agree and intend that such signature shall have the same effect as an original signature, and that the parties shall be bound by such means of execution and delivery, and that the parties hereby waive any defense to validity based on any such copies or signatures.

15    <u>Joint Venture Agreements Remain in Effect.</u>    Except as hereby amended, the Joint Venture Agreements shall remain in full force and effect.

[SIGNATURES ON FOLLOWING PAGE]

7

The parties have executed this Modification as of the date first written above.

**GF-DBI III, LLC**

By: GS Debt Partners Management, LLC,
its Manager

By: _____
Robert D. Gries, Jr., its Manager


**Dreambuilder Investments, LLC**

By: _____
Gregory E. Palmer, its Manager

**DBI Management, LLC**

By: _____
Gregory E. Palmer, its Manager


**DBI Fund Holdings, LLC**

By: _____
Gregory E. Palmer, its Managing Member

**DBI Residential, LLC**

By: _____
Gregory E. Palmer, its Managing Member


_____
Peter J. Andrews

_____
Gregory E. Palmer


**DBI-Gries Management LLC**

By: Dreambuilder Investments, LLC,
its Manager

By: _____
Gregory E. Palmer, its Manager

**DBI-Gries Holdings LLC**

By: DBI-Gries Management LLC,
its Manager

By: Dreambuilder Investments, LLC,
its Manager

By: _____
Gregory E. Palmer, its Manager

8

The parties have executed this Modification as of the date first written above.

**GF-DBI III, LLC**

By: GS Debt Partners Management, LLC,
    its Manager


By: _____
    Robert D. Gries, Jr., its Manager


**Dreambuilder Investments, LLC**        **DBI Management, LLC**


By: _____    By: _____
    Gregory E. Palmer, its Manager        Gregory E. Palmer, its Manager


**DBI Fund Holdings, LLC**        **DBI Residential, LLC**


By: _____    By: _____
    Gregory E. Palmer, its Managing Member    Gregory E. Palmer, its Managing Member


_____    _____
Peter F. Andrews            Gregory E. Palmer


**DBI-Gries Management LLC**        **DBI-Gries Holdings LLC**

By: Dreambuilder Investments, LLC,    By: DBI-Gries Management LLC,
    its Manager               its Manager

                      By: Dreambuilder Investments, LLC,
                        its Manager


By: _____    By: _____
    Gregory E. Palmer, its Manager        Gregory E. Palmer, its Manager

STATE OF FLORIDA )      )
COUNTY OF HILLSBOROUGH )

    The foregoing instrument was acknowledged before me this 6th day of ~~August~~ September, 2011, by Robert D. Gries, Jr., in his capacity as Manager of GS Debt Partners Management, LLC, a Florida limited liability company, in its capacity as Manager of GF-DBI III, LLC, a Florida limited liability company. He [X] is personally known to me or [ ] produced _____ as identification.

> ALFRED A. COLBY
> MY COMMISSION # EE 001737
> EXPIRES: September 1, 2014
> Bonded Thru Notary Public Underwriters

Notary Public, State of Florida

_____
Notary's Printed Name

My Commission Expires:


STATE OF _New Hampshire_
COUNTY OF _Rockingham_

    The foregoing instrument was acknowledged before me this 19 day of August, 2011, by Gregory E. Palmer, individually and in his capacity as (a) Manager of DBI Management, LLC, a Delaware limited liability company, (b) Managing Member of DBI Fund Holdings, LLC, a Delaware limited liability company, (c) Managing Member of DBI Residential, LLC, a New York limited liability company and (d) Manager of Dreambuilder Investments, LLC, a New York limited liability company, in its individual capacity and in its capacity as Managing Member of DBI-Gries Management LLC, a Delaware limited liability company, in its individual capacity and in its capacity as Manager of DBI-Gries Holdings LLC, a Delaware limited liability company. He [ ] is personally known to me or [✓] produced _✓ Qie NH lic_ as identification. # 08 PRG 90311

Notary Public, State of _NH_

_____
Notary's Printed Name

My Commission Expires

PAMELA F. WELLINGTON
Notary Public - New Hampshire
My Commission Expires March 4, 2014


STATE OF _____ )
COUNTY OF _____ )

    The foregoing instrument was acknowledged before me this ____ day of August, 2011, by Peter J. Andrews. He [ ] is personally known to me or [ ] produced _____ as identification.

_____
Notary Public, State of _____

_____
Notary's Printed Name

My Commission Expires:

9

STATE OF FLORIDA )
COUNTY OF HILLSBOROUGH )

 The foregoing instrument was acknowledged before me this ____ day of August, 2011, by Robert D. Gries, Jr., in his capacity as Manager of GS Debt Partners Management, LLC, a Florida limited liability company, in its capacity as Manager of GF-DBI III, LLC, a Florida limited liability company. He [ ] is personally known to me or [ ] produced _____ as identification.

        _____

        Notary Public, State of Florida

        _____

        Notary's Printed Name

        My Commission Expires:


STATE OF _____ )
COUNTY OF _____ )

 The foregoing instrument was acknowledged before me this ____ day of August, 2011, by Gregory E. Palmer, individually and in his capacity as (a) Manager of DBI Management, LLC, a Delaware limited liability company, (b) Managing Member of DBI Fund Holdings, LLC, a Delaware limited liability company, (c) Managing Member of DBI Residential, LLC, a New York limited liability company and (d) Manager of Dreambuilder Investments, LLC, a New York limited liability company, in its individual capacity and in its capacity as Managing Member of DBI-Gries Management LLC, a Delaware limited liability company, in its individual capacity and in its capacity as Manager of DBI-Gries Holdings LLC, a Delaware limited liability company. He [ ] is personally known to me or [ ] produced _____ as identification.

        _____

        Notary Public, State of _____

        _____

        Notary's Printed Name

        My Commission Expires:


STATE OF *New York* )
COUNTY OF *New York* )

 The foregoing instrument was acknowledged before me this _26_ day of August, 2011, by Peter J. Andrews. He [ ] is personally known to me or [X] produced *NJ Drivers License* as identification.

DANIEL WONG
Notary Public, State of New York
No. 01WO6183978
Qualified in Kings County
Certificate Filed in New York County
Commission Expires March 31, 2012

        _____

        Notary Public, State of *New York*

        *Daniel Wong*

        Notary's Printed Name

        My Commission Expires: *March 31, 2012*

# GUARANTY

THIS AGREEMENT is dated as of August 12, 2011, by Peter J. Andrews ("Guarantor"), whose mailing address is 1 West Street, Apartment 2436, New York, New York 10004.

## W I T N E S S E T H:

That for and in consideration and as an inducement to GF-DBI/PNC, LLC, a Florida limited liability company ("Lender"), to advance funds (hereinafter the "Loan"), to DBI Coinvestment JV IVb, LLC, a Delaware limited liability company ("Borrower"), in the amount of Three Million and No/100 Dollars ($3,000,000.00) pursuant to that certain Promissory Note (the "Note"), Credit Agreement (the "Credit Agreement") and other Loan Documents (as defined in the Credit Agreement), all of even date herewith by and between Lender and Borrower, Guarantor agrees as follows:

1.    Guarantor hereby unconditionally guarantees to Lender and to each holder from time to time of the Note that all sums stated in the Note to be payable by Borrower will be promptly paid as due and payable (whether at the time of payment of any interest or principal amount or at maturity or at any date fixed for prepayment or by acceleration thereof or otherwise) in accordance with the provisions thereof, and that Borrower will perform and observe each and every covenant, agreement, term and condition in the Credit Agreement or any other Loan Documents to be performed or observed by Borrower. This Guaranty shall be irrevocable, and in all events shall be unconditional and absolute, and if for any reason any such sums, or any part thereof, shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to and in accordance with the provisions of the Note and the Credit Agreement, regardless of any defenses or rights of set-off or counterclaim which Borrower may have or assert, regardless of whether Lender shall have taken any steps to enforce any rights against Borrower or any other person to collect such sum, or any part thereof, and regardless of any other condition or contingency. Guarantor also agrees to pay to such person such further amount as shall be sufficient to cover the cost and expense of collecting such sums, or part thereof, or of otherwise enforcing this Guaranty, including, in any case, reasonable compensation to its attorneys for all services rendered in that connection. Upon Borrower's failure to perform or observe any covenant, agreement, term or condition in the Note, the Credit Agreement or any other Loan Document to be performed or observed by Borrower, Guarantor will promptly perform and observe the same or cause the same promptly to be performed or observed.

1.    The obligations of Guarantor hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of Guarantor hereunder shall not be released, discharged or terminated or in any other way affected or impaired by, any circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof, including, without limitation (a) any amendment or modification of or addition or supplement to the Note, the Credit Agreement or any other Loan Document; (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect of the Note, the Credit Agreement or any other Loan Document; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Note, the Credit Agreement or any other Loan Document; (d) any

exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Guaranty, the Note, the Credit Agreement or any other Loan Document; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person or entity, or any disposition by Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation or similar proceeding involving or affecting Borrower; (g) any partial prepayment, assignment or transfer of the Note; (h) any limitation of Borrower' liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part, of any of the terms of the Note; or (i) any other circumstances whatsoever.

2.    Guarantor unconditionally waives any right Guarantor may have to (a) all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of any holder of the Note against Guarantor, including, without limitation, notice to Borrower of default, presentment to and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to proceed against Borrower, (c) require Lender to proceed against or exhaust any security granted by Borrower, or (d) require Lender to pursue any other remedy within the power of Lender, and Guarantor agrees that all of Guarantor's obligations under this Guaranty are independent of the obligations of Borrower and that a separate action may be brought against Guarantor whether or not an action is commenced against Borrower.

3.    Guarantor shall pay all fees (including reasonable attorneys' fees and costs), costs and expenses, of any nature whatsoever, including but not limited to costs, fees and expenses incurred in connection with appellate, collection and bankruptcy proceedings, incurred by Lender or any holder of the Note in connection with enforcing this Guaranty or with any transaction referred to herein. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby.

4.    LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY.

5.    In the event that for any reason whatsoever Borrower are now or hereafter become indebted to Guarantor, Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien and in all other respects to all obligations of Borrower to Lender which are covered by this Guaranty, and that Guarantor, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, shall not be entitled to enforce or receive payment thereof until all sums then due and owing to Lender shall have been paid in full. If, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, any payment shall have been made to Guarantor by Borrower on any said indebtedness during any time that there are obligations outstanding from Borrower to Lender which are covered by this Guaranty, Guarantor shall hold in trust all such

payments for the benefit of Lender and shall make said payments to Lender to be credited and applied against obligations of Borrower to Lender, whether matured or unmatured, in accordance with the discretion of Lender.

7.   If at any time all or any part of any payment theretofore applied by Lender to any obligations hereby guaranteed is or must be rescinded or returned by Lender for any reason whatsoever (including without limitation the insolvency, bankruptcy or reorganization of Borrower), such indebtedness shall for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such indebtedness as though such application by Lender had not been made.

8.   This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

9.   This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Florida, without reference to the choice of laws rules of any jurisdiction.

Guarantor has executed this Guaranty as of the date first above written.

Peter J. Andrews

STATE OF _New York_        )
COUNTY OF _New York_       )

The foregoing instrument was acknowledged before me this _26th_ day of August, 2011, by Peter J. Andrews.   He [ ] is personally known to me or [✓] produced _NJ Drivers License_ as identification.

DANIEL WONG
Notary Public, State of New York
No. 01WO6183978
Qualified in Kings County
Certificate Filed in New York County
Commission Expires March 31, 2012

Notary Public, State of _New York_

_Daniel Wong_
Notary's Printed Name

My Commission Expires: _March 31, 2012_

3

## GUARANTY

THIS AGREEMENT is dated as of August 22, 2011, by Peter J. Andrews ("Guarantor"), whose mailing address is 1 West Street, Apartment 2436, New York, New York 10004.

### WITNESSETH:

That for and in consideration and as an inducement to GF-DBI/GMAC, LLC, a Florida limited liability company ("Lender"), to advance funds (hereinafter the "Loan"), to DBI Coinvestment JV Vb, LLC, a Delaware limited liability company ("Borrower"), in the amount of Three Million and No/100 Dollars ($3,000,000.00) pursuant to that certain Promissory Note (the "Note"), Credit Agreement (the "Credit Agreement") and other Loan Documents (as defined in the Credit Agreement), all of even date herewith by and between Lender and Borrower, Guarantor agrees as follows:

1.      Guarantor hereby unconditionally guarantees to Lender and to each holder from time to time of the Note that all sums stated in the Note to be payable by Borrower will be promptly paid as due and payable (whether at the time of payment of any interest or principal amount or at maturity or at any date fixed for prepayment or by acceleration thereof or otherwise) in accordance with the provisions thereof, and that Borrower will perform and observe each and every covenant, agreement, term and condition in the Credit Agreement or any other Loan Documents to be performed or observed by Borrower. This Guaranty shall be irrevocable, and in all events shall be unconditional and absolute, and if for any reason any such sums, or any part thereof, shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to and in accordance with the provisions of the Note and the Credit Agreement, regardless of any defenses or rights of set-off or counterclaim which Borrower may have or assert, regardless of whether Lender shall have taken any steps to enforce any rights against Borrower or any other person to collect such sum, or any part thereof, and regardless of any other condition or contingency. Guarantor also agrees to pay to such person such further amount as shall be sufficient to cover the cost and expense of collecting such sums, or part thereof, or of otherwise enforcing this Guaranty, including, in any case, reasonable compensation to its attorneys for all services rendered in that connection. Upon Borrower's failure to perform or observe any covenant, agreement, term or condition in the Note, the Credit Agreement or any other Loan Document to be performed or observed by Borrower, Guarantor will promptly perform and observe the same or cause the same promptly to be performed or observed.

1.      The obligations of Guarantor hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of Guarantor hereunder shall not be released, discharged or terminated or in any other way affected or impaired by, any circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof, including, without limitation (a) any amendment or modification of or addition or supplement to the Note, the Credit Agreement or any other Loan Document; (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect of the Note, the Credit Agreement or any other Loan Document; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Note, the Credit Agreement or any other Loan Document; (d) any

exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Guaranty, the Note, the Credit Agreement or any other Loan Document; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person or entity, or any disposition by Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation or similar proceeding involving or affecting Borrower; (g) any partial prepayment, assignment or transfer of the Note; (h) any limitation of Borrower' liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part, of any of the terms of the Note; or (i) any other circumstances whatsoever.

2.      Guarantor unconditionally waives any right Guarantor may have to (a) all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of any holder of the Note against Guarantor, including, without limitation, notice to Borrower of default, presentment to and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to proceed against Borrower, (c) require Lender to proceed against or exhaust any security granted by Borrower, or (d) require Lender to pursue any other remedy within the power of Lender, and Guarantor agrees that all of Guarantor's obligations under this Guaranty are independent of the obligations of Borrower and that a separate action may be brought against Guarantor whether or not an action is commenced against Borrower.

3.      Guarantor shall pay all fees (including reasonable attorneys' fees and costs), costs and expenses, of any nature whatsoever, including but not limited to costs, fees and expenses incurred in connection with appellate, collection and bankruptcy proceedings, incurred by Lender or any holder of the Note in connection with enforcing this Guaranty or with any transaction referred to herein. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby.

4.      LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY.

5.      In the event that for any reason whatsoever Borrower are now or hereafter become indebted to Guarantor, Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien and in all other respects to all obligations of Borrower to Lender which are covered by this Guaranty, and that Guarantor, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, shall not be entitled to enforce or receive payment thereof until all sums then due and owing to Lender shall have been paid in full. If, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, any payment shall have been made to Guarantor by Borrower on any said indebtedness during any time that there are obligations outstanding from Borrower to Lender which are covered by this Guaranty, Guarantor shall hold in trust all such

payments for the benefit of Lender and shall make said payments to Lender to be credited and applied against obligations of Borrower to Lender, whether matured or unmatured, in accordance with the discretion of Lender.

     7.     If at any time all or any part of any payment theretofore applied by Lender to any obligations hereby guaranteed is or must be rescinded or returned by Lender for any reason whatsoever (including without limitation the insolvency, bankruptcy or reorganization of Borrower), such indebtedness shall for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such indebtedness as though such application by Lender had not been made.

     8.     This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

     9.     This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Florida, without reference to the choice of laws rules of any jurisdiction.

     Guarantor has executed this Guaranty as of the date first above written.

_____
Peter J. Andrews

STATE OF _New York_ )
COUNTY OF _New York_ )

     The foregoing instrument was acknowledged before me this _26_ day of August, 2011, by Peter J. Andrews. He [ ] is personally known to me or [✓] produced _New Jersey Drivers License_ as identification.

DANIEL WONG
Notary Public, State of New York
No. 01WO6183978
Qualified in Kings County
Certificate Filed in New York County
Commission Expires March 31, 2012

_____
Notary Public, State of _New York_

_Daniel Wong_
Notary's Printed Name

My Commission Expires: _March 31, 2012_

3

# Exhibit C

## GUARANTY

THIS AGREEMENT is dated as of March 24, 2011, by Gregory E. Palmer ("Guarantor"), whose mailing address is 172 Main Street, Kingston, New Hampshire 03848.

### WITNESSETH:

That for and in consideration and as an inducement to Gries DBI III, LLC, a Florida limited liability company ("Lender"), to advance funds (hereinafter the "Loan"), to Dreambuilder Investments, LLC, a New York limited liability company ("Borrower"), in the amount of up to Three Million and No/100 Dollars ($3,000,000.00) pursuant to that certain Straight Line of Credit Promissory Note (the "Note"), Credit Agreement (the "Credit Agreement") and other Loan Documents (as defined in the Credit Agreement), all of even date herewith by and between Lender and Borrower, Guarantor agrees as follows:

1.    Guarantor hereby unconditionally guarantees to Lender and to each holder from time to time of the Note that all sums stated in the Note to be payable by Borrower will be promptly paid as due and payable (whether at the time of payment of any interest or principal amount or at maturity or at any date fixed for prepayment or by acceleration thereof or otherwise) in accordance with the provisions thereof, and that Borrower will perform and observe each and every covenant, agreement, term and condition in the Credit Agreement or any other Loan Documents to be performed or observed by Borrower.  This Guaranty shall be irrevocable, and in all events shall be unconditional and absolute, and if for any reason any such sums, or any part thereof, shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to and in accordance with the provisions of the Note and the Credit Agreement, regardless of any defenses or rights of set-off or counterclaim which Borrower may have or assert, regardless of whether Lender shall have taken any steps to enforce any rights against Borrower or any other person to collect such sum, or any part thereof, and regardless of any other condition or contingency.  Guarantor also agrees to pay to such person such further amount as shall be sufficient to cover the cost and expense of collecting such sums, or part thereof, or of otherwise enforcing this Guaranty, including, in any case, reasonable compensation to its attorneys for all services rendered in that connection.  Upon Borrower's failure to perform or observe any covenant, agreement, term or condition in the Note, the Credit Agreement or any other Loan Document to be performed or observed by Borrower, Guarantor will promptly perform and observe the same or cause the same promptly to be performed or observed.

2.    The obligations of Guarantor hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of Guarantor hereunder shall not be released, discharged or terminated or in any other way affected or impaired by, any circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof, including, without limitation (a) any amendment or modification of or addition or supplement to the Note, the Credit Agreement or any other Loan Document; (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect of the Note, the Credit Agreement or any other Loan Document; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Note, the Credit Agreement or any other Loan Document; (d) any

exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Guaranty, the Note, the Credit Agreement or any other Loan Document; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person or entity, or any disposition by Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation or similar proceeding involving or affecting Borrower; (g) any partial prepayment, assignment or transfer of the Note; (h) any limitation of Borrower' liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part, of any of the terms of the Note; or (i) any other circumstances whatsoever.

3.    Guarantor unconditionally waives any right Guarantor may have to (a) all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of any holder of the Note against Guarantor, including, without limitation, notice to Borrower of default, presentment to and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to proceed against Borrower, (c) require Lender to proceed against or exhaust any security granted by Borrower, or (d) require Lender to pursue any other remedy within the power of Lender, and Guarantor agrees that all of Guarantor's obligations under this Guaranty are independent of the obligations of Borrower and that a separate action may be brought against Guarantor whether or not an action is commenced against Borrower.

4.    Guarantor shall pay all fees (including reasonable attorneys' fees and costs), costs and expenses, of any nature whatsoever, including but not limited to costs, fees and expenses incurred in connection with appellate, collection and bankruptcy proceedings, incurred by Lender or any holder of the Note in connection with enforcing this Guaranty or with any transaction referred to herein. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby.

5.    LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY.

6.    In the event that for any reason whatsoever Borrower are now or hereafter become indebted to Guarantor, Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien and in all other respects to all obligations of Borrower to Lender which are covered by this Guaranty, and that Guarantor, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, shall not be entitled to enforce or receive payment thereof until all sums then due and owing to Lender shall have been paid in full. If, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, any payment shall have been made to Guarantor by Borrower on any said indebtedness during any time that there are obligations outstanding from Borrower to Lender which are covered by this Guaranty, Guarantor shall hold in trust all such

2

payments for the benefit of Lender and shall make said payments to Lender to be credited and applied against obligations of Borrower to Lender, whether matured or unmatured, in accordance with the discretion of Lender.

1.      If at any time all or any part of any payment theretofore applied by Lender to any obligations hereby guaranteed is or must be rescinded or returned by Lender for any reason whatsoever (including without limitation the insolvency, bankruptcy or reorganization of Borrower), such indebtedness shall for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such indebtedness as though such application by Lender had not been made.

2.      This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

3.      This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Florida, without reference to the choice of laws rules of any jurisdiction.

Guarantor has executed this Guaranty as of the date first above written.


_____
Gregory E. Palmer


STATE OF ___New York___      )
COUNTY OF ___New York___     )

The foregoing instrument was acknowledged before me this 23rd day of March, 2011, by Gregory E. Palmer.  He is personally known to me or produced _NH Driver's License_ as identification.

_____
Notary Public, State of ___New York___

**ROBERTA ARNONE, ESQ.**
Notary's Printed Name

My Commission Expires:

* I'm qualified in New York County and
my commission expires on May 22, 2011.
• ROBERTA ARNONE •
NOTARY PUBLIC, STATE OF NEW YORK •
COMMISSION # 0 2 A R 6 0 4 4 1 4 2
* One of the thirteen revolutionary colonies and
the eleventh State of the United States of America.

3

## MODIFICATION OF JOINT VENTURE AGREEMENTS

THIS MODIFICATION OF JOINT VENTURE AGREEMENTS (this "Modification") is made and entered into as of the 22nd day of August, 2011, by and between by GF-DBI III, LLC, a Florida limited liability company ("GF DBI"), Dreambuilder Investments, LLC, a New York limited liability company ("DBI"), DBI Management, LLC, a Delaware limited liability company ("DBI Management"), DBI Fund Holdings, LLC, a Delaware limited liability company ("DBI Fund Holdings"), DBI Residential, LLC, a New York limited liability company ("DBI Residential"), Peter J. Andrews ("Andrews"), Gregory E. Palmer ("Palmer"), DBI-Gries Management LLC, a Delaware limited liability company ("DBI-Gries Management"), and DBI-Gries Holdings LLC, a Delaware limited liability company ("DBI-Gries Holdings"). In consideration of the mutual covenants and promises set forth in this Modification and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree to the following recitals, terms and conditions:

1    Recitals.

1.1    The parties to this Modification are parties to one or more of those certain agreements comprising a joint venture between GF DBI and DBI for the purpose of acquiring, servicing and liquidating pools of defaulted residential loans secured by second mortgages (the "Joint Venture"), including, without limitation the following:

1.1.1    Limited Liability Company Agreement of DBI-Gries Holdings LLC dated as of March 24, 2011, executed by GF DBI, DBI-Gries Management, DBI-Gries Holdings and DBI (the "Holdings LLC Agreement");

1.1.2    Limited Liability Company Agreement of DBI-Gries Management LLC dated as of March 24, 2011, executed by GF DBI, DBI Management, DBI-Gries Management and DBI (the "Management LLC Agreement");

1.1.3    Acquisition and Servicing Agreement dated as of March 24, 2011, executed by DBI-Gries Holdings and DBI (the "Acquisition and Servicing Agreement");

1.1.4    Credit Agreement dated as of March 24, 2011, executed by DBI and GF DBI (the "Credit Agreement");

1.1.5    Guaranty dated as of March 24, 2011, executed by Andrews in favor of GF DBI (the "Andrews Guaranty");

1.1.6    Guaranty dated as of March 24, 2011, executed by Palmer in favor of GF DBI (the "Palmer Guaranty");

1.1.7    Security Agreement dated as of March 24, 2011, executed by DBI and GF DBI (the "DBI Security Agreement");

1.1.8   Security Agreement dated as of March 24, 2011, executed by DBI Fund Holdings and GF DBI (the "DBI Fund Holdings Security Agreement");

1.1.9   Security Agreement dated as of March 24, 2011, executed by DBI Management and GF DBI (the "DBI Management Security Agreement"); and

1.1.10  Security Agreement dated as of March 24, 2011, executed by DBI Residential and GF DBI (the "DBI Residential Security Agreement").

The foregoing agreements, together with all other agreements entered into in connection with the Joint Venture, shall be referred to collectively as the "Joint Venture Agreements"). Capitalized terms not otherwise defined in this Modification shall have the meaning assigned them in the Joint Venture Agreements.

1.2     The parties to this Amendment have agreed to certain modifications of the Joint Venture Agreements with respect to certain matters, as set forth below.

2       **Holdings LLC Agreement.**

2.1     Section 4.2(b)(i).  Section 4.2(b)(i) of the Holdings LLC Agreement is hereby modified to read in its entirety as follows:

(i)     First, to GF DBI until such time as GF DBI has received cumulative distributions pursuant to this subparagraph 4.2(b)(i) on account of such Mortgage Loan Pool in an amount equal to (1) the aggregate amount of Capital Contributions made by GF DBI on account of such Mortgage Loan Pool (other than for the Working Capital Loan related to that Mortgage Loan Pool), plus (2) an annualized return of Fifteen percent (15%) on outstanding capital; and

2.2     Section 7.4.  Section 7.4 of the Holdings LLC Agreement is hereby modified to read in its entirety as follows:

SECTION 7.4.  *Liquidation Shortfall Payment by DBI.*  In the event that, after application and distribution of proceeds of liquidation as set forth in Section 7.3 of this Agreement and as set forth in Section 7.3 of the Management LLC Agreement, the sum of cumulative distributions to GF DBI under this Agreement plus cumulative distributions made to GF DBI under the Management LLC Agreement are less than GF DBI's cumulative capital contributions hereunder plus an annualized return of Fifteen percent (15%), DBI shall pay the difference to GF DBI within thirty (30) days after written demand therefor.

2

2.3    Fund V Working Capital Loan. On or about July 22, 2011, DBI-Gries Holdings funded the purchase of Mortgage Loan Pools through DBI Coinvestor Fund V, LLC, a Delaware limited liability company ("Fund V"), which is a Subsidiary under the Holdings LLC Agreement. DBI and DBI-Gries Holdings agree that $750,000.00 of such funding is a Working Capital Loan and shall be repaid by DBI in accordance with the terms of the Acquisition and Servicing Agreement.

2.4    Funding Cutoff Date; No Further Capital Contributions. The Funding Cutoff Date referred to in Section 3.1(b) of the Holdings LLC Agreement shall be deemed to be the date of this Modification. GF DBI shall have no further obligation to make capital contributions of any kind under the Holdings LLC Agreement or otherwise in connection with the Joint Venture.

2.5    Section 10.4(b). Section 10.4(b) of the Holdings LLC Agreement is hereby modified to delete the requirement that annual financial statements be audited and instead to require that such financial statements be reviewed in accordance with agreed upon procedures.

2.6    Section 3.2. Section 3.2 of the Management LLC Agreement is hereby modified to delete the requirement that DBI-Gries Management be the Manager of any Subsidiary formed to purchase Mortgage Loan Pools after the date of this Agreement.

3    Management LLC Agreement.

3.1    Section 4.2(a). Section 4.2(a) of the Management LLC Agreement is hereby modified to reflect that, subject to Section 4.2(b) of the Management LLC Agreement (as modified herein), GF DBI shall not be entitled to distributions with respect to any Mortgage Loan Pools purchased by DBI-Gries Holdings after the date of this Agreement. DBI, as Manager of DBI-Gries Management, shall adjust allocations of Net Profits and Net Losses to reflect the allocation of any such distributions.

3.2    Section 4.2(b). Section 4.2(b) of the Management LLC Agreement is hereby modified to read in its entirety as follows:

    (b)    Notwithstanding the foregoing, any distributions payable to DBI Management shall be paid to GF DBI under either of the following circumstances: (i) DBI fails to timely pay in full all outstanding principal and accrued interest on any Working Capital Loan on or after the applicable Working Capital Loan Maturity Date, as described in Section 3.1(c) of the Acquisition and Servicing Agreement; or (ii) DBI fails to timely pay in full any installment of accrued interest after the Advance Cutoff Date or to repay all principal and accrued interest on the Loan Maturity Date, as described in Section 2.5 of the Credit Agreement of even date between GF DBI and DBI.

3.3    Section 5.1. Section 5.1 of the Management LLC Agreement is hereby modified to read in its entirety as follows:

3

SECTION 5.1.  *Manager.*  The Manager of the Company (the "Manager") shall be DBI.

3.4     Section 5.8(a)(vii).  Section 5.8(a)(vii) of the Management LLC Agreement is hereby modified to read in its entirety as follows:

(vii)   the occurrence of any default by the Company under the Holdings LLC Agreement or the LLC operating agreement of any Subsidiary, as determined by GF DBI, that remains uncured after the expiration of any cure period provided therein; or

3.5     Section 10.4(b).  Section 10.4(b) of the Management LLC Agreement is hereby modified to delete the requirement that annual financial statements be audited and instead to require that such financial statements be reviewed in accordance with agreed upon procedures.

4     Acquisition and Servicing Agreement.

4.1     Section 9.1.  Section 9.1 of the Acquisition and Servicing Agreement is hereby deleted in its entirety.

4.2 ·   Section 9.2.  Section 9.2 of the Acquisition and Servicing Agreement is hereby deleted in its entirety.

4.3     Section 9.3.  Section 9.3 of the Acquisition and Servicing Agreement is hereby deleted in its entirety.

5     Credit Agreement.

5.1     No Further Advances.  GF-DBI shall have no further obligation to make any advances under Section 2.3 of the Credit Agreement or otherwise in connection with the loan evidenced by the Credit Agreement.

5.2     Section 2.5.  Section 2.5 of the Credit Agreement is hereby modified to read in its entirety as follows:

2.5     Repayment.  Interest shall be payable as provided in the Note.  The outstanding principal balance due under the Note shall be paid on or before July 1, 2012 (the "Loan Maturity Date").  If Borrower fails to timely pay in full any installment of accrued interest after the Advance Cutoff Date or to repay all principal and accrued interest on the Loan Maturity Date, Lender shall, in addition to any other remedy available to Lender hereunder, be entitled to payment of any such shortfall out of distributions otherwise payable to DBI Management under the Management LLC Agreement.

5.3     Security Agreements.  The definition of Security Agreements in Section 1.1 of the Credit Agreement is hereby modified to read in its entirety as follows:

"Security Agreements" means the Security Agreements of even date executed by Borrower, DBI Fund Holdings, DBI Management and DBI Residential in favor of Lender, as they may be amended, renewed, increased, restated, replaced, or otherwise modified from time to time.

6    Andrews Guaranty.  The Andrews Guaranty is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional obligations guarantied thereby.

7    Palmer Guaranty.  The Palmer Guaranty is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional obligations guarantied thereby.

8    DBI Security Agreement.

8.1    Section 2.2.  Section 2.2 of the DBI Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

8.2    Section 4(a).  Section 4(a) of the DBI Security Agreement is hereby modified to read in its entirety as follows:

(a)    Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests.  After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

9    DBI Fund Holdings Security Agreement.

9.1    Section 2.2.  Section 2.2 of the DBI Fund Holdings Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

9.2    Section 4(a).  Section 4(a) of the DBI Fund Holdings Security Agreement is hereby modified to read in its entirety as follows:

(a)    Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests.  After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

10    DBI Management Security Agreement.

    10.1    Section 2.2.  Section 2.2 of the DBI Management Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

    10.2    Section 4(a).  Section 4(a) of the DBI Management Security Agreement is hereby modified to read in its entirety as follows:

        (a)    Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests.  After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

11    DBI Residential Security Agreement.

    11.1    Section 2.2.  Section 2.2 of the DBI Residential Security Agreement is hereby amended to add the shortfall payments described in Section 2.2 of this Modification and the Working Capital Loans as additional Indebtedness secured thereby.

    11.2    Section 4(a).  Section 4(a) of the DBI Residential Security Agreement is hereby modified to read in its entirety as follows:

        (a)    Until an Event of Default (as hereinafter defined), Debtor may exercise all voting and consensual rights and powers attendant to the Membership Interests.  After an Event of Default, Secured Party shall have the right to take possession of the Collateral and to sell, assign, transfer, or set over the Collateral, or any portion thereof, and apply the proceeds therefrom to the Indebtedness.

12    Participation Right.  DBI hereby agree that GF DBI (or a designated affiliate thereof) shall have the right to participate (at a level to be mutually agreed upon by DBI and GF DBI in good faith) in any future purchase of mortgage pools or similar investment opportunity in which DBI is an affiliate, investor, manager, promoter or servicer within three (3) years of the date of this Modification. GF DBI shall have twenty (20) business days after written notification of such a transaction within which to exercise its right to participate by written notice to DBI, failing which GF DBI's right to participate in that investment opportunity shall terminate. The written notification to GF DBI of the transaction shall provide sufficiently detailed information concerning the investment terms (including, without limitation, a proposed participation level) to reasonably allow GF DBI to make its determination whether to participate. The rights granted pursuant to this paragraph shall survive the termination of the Joint Venture.

13    "Most Favored Nation" Provision.  In the event that DBI, or any affiliate of DBI, provides a third party investor in pools of defaulted residential loans secured by second mortgages with economic terms more favorable than those provided to GF DBI under the Joint

6

Venture, DBI shall execute any agreements necessary to extend such more favorable terms to GF DBI under the Joint Venture within fifteen days of GF DBI's request therefor.

14    <u>Counterparts and Electronic Signatures</u>.    This Modification may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument.    The parties may execute and deliver this Modification by forwarding by electronic means, copies of this Modification showing execution by the parties sending the same, and the parties agree and intend that such signature shall have the same effect as an original signature, and that the parties shall be bound by such means of execution and delivery, and that the parties hereby waive any defense to validity based on any such copies or signatures.

15    <u>Joint Venture Agreements Remain in Effect</u>.    Except as hereby amended, the Joint Venture Agreements shall remain in full force and effect.

**[SIGNATURES ON FOLLOWING PAGE]**

7

The parties have executed this Modification as of the date first written above.

**GF-DBI III, LLC**

By: GS Debt Partners Management, LLC,
    its Manager

By: _____
    Robert D. Gries, Jr., its Manager

**Dreambuilder Investments, LLC**

By: _____
    Gregory E. Palmer, its Manager

**DBI Management, LLC**

By: _____
    Gregory E. Palmer, its Manager

**DBI Fund Holdings, LLC**

By: _____
    Gregory E. Palmer, its Managing Member

**DBI Residential, LLC**

By: _____
    Gregory E. Palmer, its Managing Member

_____
Peter J. Andrews

_____
Gregory E. Palmer

**DBI-Gries Management LLC**

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

**DBI-Gries Holdings LLC**

By: DBI-Gries Management LLC,
    its Manager

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

8

The parties have executed this Modification as of the date first written above.

**GF-DBI III, LLC**

By: GS Debt Partners Management, LLC,
    its Manager

By: _____
    Robert D. Gries, Jr., its Manager

**Dreambuilder Investments, LLC**

By: _____
    Gregory E. Palmer, its Manager

**DBI Management, LLC**

By: _____
    Gregory E. Palmer, its Manager

**DBI Fund Holdings, LLC**

By: _____
    Gregory E. Palmer, its Managing Member

**DBI Residential, LLC**

By: _____
    Gregory E. Palmer, its Managing Member

_____
Peter J. Andrews

_____
Gregory E. Palmer

**DBI-Gries Management LLC**

By: Dreambuilder Investments, LLC,
    its Manager

**DBI-Gries Holdings LLC**

By: DBI-Gries Management LLC,
    its Manager

By: Dreambuilder Investments, LLC,
    its Manager

By: _____
    Gregory E. Palmer, its Manager

By: _____
    Gregory E. Palmer, its Manager

8

STATE OF FLORIDA    )
COUNTY OF HILLSBOROUGH )

  The foregoing instrument was acknowledged before me this ~~6th~~ *September* day of ~~August~~, 2011, by Robert D. Gries, Jr., in his capacity as Manager of GS Debt Partners Management, LLC, a Florida limited liability company, in its capacity as Manager of GF-DBI III, LLC, a Florida limited liability company.  He [X] is personally known to me or [_] produced _____ as identification.

<div style="border:1px solid black; display:inline-block; padding:4px;">
ALFRED A. COLBY<br>
MY COMMISSION # EE 001737<br>
EXPIRES: September 1, 2014<br>
Bonded Thru Notary Public Underwriters
</div>

Notary Public, State of Florida

_____
Notary's Printed Name

My Commission Expires:

STATE OF _New Hampshire_
COUNTY OF _Rockingham_

  The foregoing instrument was acknowledged before me this 19 day of August, 2011, by Gregory E. Palmer, individually and in his capacity as (a) Manager of DBI Management, LLC, a Delaware limited liability company, (b) Managing Member of DBI Fund Holdings, LLC, a Delaware limited liability company, (c) Managing Member of DBI Residential, LLC, a New York limited liability company and (d) Manager of Dreambuilder Investments, LLC, a New York limited liability company, in its individual capacity and in its capacity as Managing Member of DBI-Gries Management LLC, a Delaware limited liability company, in its individual capacity and in its capacity as Manager of DBI-Gries Holdings LLC, a Delaware limited liability company.  He [_] is personally known to me or [X] produced ✓ Online NH lic   as identification.  # 08PRG-70311

Notary Public, State of _NH_____

_____
Notary's Printed Name

My Commission Expires: PAMELA F. WELLINGTON
      Notary Public - New Hampshire
      My Commission Expires March 4, 2014

STATE OF _____ )
COUNTY OF _____ )

  The foregoing instrument was acknowledged before me this ____ day of August, 2011, by Peter J. Andrews.  He [_] is personally known to me or [_] produced _____ as identification.

_____
Notary Public, State of _____

_____
Notary's Printed Name

My Commission Expires:

9

STATE OF FLORIDA                )
COUNTY OF HILLSBOROUGH          )

The foregoing instrument was acknowledged before me this _____ day of August, 2011, by Robert D. Gries, Jr., in his capacity as Manager of GS Debt Partners Management, LLC, a Florida limited liability company, in its capacity as Manager of GF-DBI III, LLC, a Florida limited liability company. He [ ] is personally known to me or [ ] produced _____ as identification.


_____
Notary Public, State of Florida

_____
Notary's Printed Name
My Commission Expires:


STATE OF _____        )
COUNTY OF _____        )

The foregoing instrument was acknowledged before me this _____ day of August, 2011, by Gregory E. Palmer, individually and in his capacity as (a) Manager of DBI Management, LLC, a Delaware limited liability company, (b) Managing Member of DBI Fund Holdings, LLC, a Delaware limited liability company, (c) Managing Member of DBI Residential, LLC, a New York limited liability company and (d) Manager of Dreambuilder Investments, LLC, a New York limited liability company, in its individual capacity and in its capacity as Managing Member of DBI-Gries Management LLC, a Delaware limited liability company, in its individual capacity and in its capacity as Manager of DBI-Gries Holdings LLC, a Delaware limited liability company. He [ ] is personally known to me or [ ] produced _____ as identification.


_____
Notary Public, State of _____

_____
Notary's Printed Name
My Commission Expires:


STATE OF *New York*             )
COUNTY OF *New York*            )

The foregoing instrument was acknowledged before me this 26 day of August, 2011, by Peter J. Andrews. He [ ] is personally known to me or [X] produced *NJ Drivers License* as identification.

**DANIEL WONG**
**Notary Public, State of New York**
**No. 01WO6183978**
**Qualified in Kings County**
**Certificate Filed in New York County**
**Commission Expires March 31, 2012**

_____
Notary Public, State of *New York*

*Daniel Wong*
Notary's Printed Name

My Commission Expires: *March 31, 2012*


9

# GUARANTY

THIS AGREEMENT is dated as of August 12, 2011, by Gregory E. Palmer ("Guarantor"), whose mailing address is 172 Main Street, Kingston, New Hampshire 03848.

## WITNESSETH:

That for and in consideration and as an inducement to GF-DBI/PNC, LLC, a Florida limited liability company ("Lender"), to advance funds (hereinafter the "Loan"), to DBI Coinvestment JV IVb, LLC, a Delaware limited liability company ("Borrower"), in the amount of Three Million and No/100 Dollars ($3,000,000.00) pursuant to that certain Promissory Note (the "Note"), Credit Agreement (the "Credit Agreement") and other Loan Documents (as defined in the Credit Agreement), all of even date herewith by and between Lender and Borrower, Guarantor agrees as follows:

1.      Guarantor hereby unconditionally guarantees to Lender and to each holder from time to time of the Note that all sums stated in the Note to be payable by Borrower will be promptly paid as due and payable (whether at the time of payment of any interest or principal amount or at maturity or at any date fixed for prepayment or by acceleration thereof or otherwise) in accordance with the provisions thereof, and that Borrower will perform and observe each and every covenant, agreement, term and condition in the Credit Agreement or any other Loan Documents to be performed or observed by Borrower. This Guaranty shall be irrevocable, and in all events shall be unconditional and absolute, and if for any reason any such sums, or any part thereof, shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to and in accordance with the provisions of the Note and the Credit Agreement, regardless of any defenses or rights of set-off or counterclaim which Borrower may have or assert, regardless of whether Lender shall have taken any steps to enforce any rights against Borrower or any other person to collect such sum, or any part thereof, and regardless of any other condition or contingency. Guarantor also agrees to pay to such person such further amount as shall be sufficient to cover the cost and expense of collecting such sums, or part thereof, or of otherwise enforcing this Guaranty, including, in any case, reasonable compensation to its attorneys for all services rendered in that connection. Upon Borrower's failure to perform or observe any covenant, agreement, term or condition in the Note, the Credit Agreement or any other Loan Document to be performed or observed by Borrower, Guarantor will promptly perform and observe the same or cause the same promptly to be performed or observed.

2.      The obligations of Guarantor hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of Guarantor hereunder shall not be released, discharged or terminated or in any other way affected or impaired by, any circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof, including, without limitation (a) any amendment or modification of or addition or supplement to the Note, the Credit Agreement or any other Loan Document; (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect of the Note, the Credit Agreement or any other Loan Document; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Note, the Credit Agreement or any other Loan Document; (d) any

exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Guaranty, the Note, the Credit Agreement or any other Loan Document; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person or entity, or any disposition by Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation or similar proceeding involving or affecting Borrower; (g) any partial prepayment, assignment or transfer of the Note; (h) any limitation of Borrower' liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part, of any of the terms of the Note; or (i) any other circumstances whatsoever.

3.    Guarantor unconditionally waives any right Guarantor may have to (a) all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of any holder of the Note against Guarantor, including, without limitation, notice to Borrower of default, presentment to and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to proceed against Borrower, (c) require Lender to proceed against or exhaust any security granted by Borrower, or (d) require Lender to pursue any other remedy within the power of Lender, and Guarantor agrees that all of Guarantor's obligations under this Guaranty are independent of the obligations of Borrower and that a separate action may be brought against Guarantor whether or not an action is commenced against Borrower.

4.    Guarantor shall pay all fees (including reasonable attorneys' fees and costs), costs and expenses, of any nature whatsoever, including but not limited to costs, fees and expenses incurred in connection with appellate, collection and bankruptcy proceedings, incurred by Lender or any holder of the Note in connection with enforcing this Guaranty or with any transaction referred to herein. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby.

5.    LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY.

6.    In the event that for any reason whatsoever Borrower are now or hereafter become indebted to Guarantor, Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien and in all other respects to all obligations of Borrower to Lender which are covered by this Guaranty, and that Guarantor, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, shall not be entitled to enforce or receive payment thereof until all sums then due and owing to Lender shall have been paid in full. If, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, any payment shall have been made to Guarantor by Borrower on any said indebtedness during any time that there are obligations outstanding from Borrower to Lender which are covered by this Guaranty, Guarantor shall hold in trust all such

payments for the benefit of Lender and shall make said payments to Lender to be credited and applied against obligations of Borrower to Lender, whether matured or unmatured, in accordance with the discretion of Lender.

1.    If at any time all or any part of any payment theretofore applied by Lender to any obligations hereby guaranteed is or must be rescinded or returned by Lender for any reason whatsoever (including without limitation the insolvency, bankruptcy or reorganization of Borrower), such indebtedness shall for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such indebtedness as though such application by Lender had not been made.

2.    This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

3.    This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Florida, without reference to the choice of laws rules of any jurisdiction.

Guarantor has executed this Guaranty as of the date first above written.


Gregory E. Palmer


STATE OF ___NH___        )
COUNTY OF _Rockingham_   )

The foregoing instrument was acknowledged before me this _12_ day of August, 2011, by Gregory E. Palmer. He [ ] is personally known to me or [X] produced ___NH DL___ as identification.


Notary Public, State of __NH__

Deborah Hamilton
Notary's Printed Name

My Commission Expires: _2 | 2 | 2016_

DEBORAH L HAMILTON
Notary Public, New Hampshire
My Commission Expires Feb 2, 2016

3

# GUARANTY

THIS AGREEMENT is dated as of August 22, 2011, by Gregory E. Palmer ("Guarantor"), whose mailing address is 172 Main Street, Kingston, New Hampshire 03848.

## WITNESSETH:

That for and in consideration and as an inducement to GF-DBI/GMAC, LLC, a Florida limited liability company ("Lender"), to advance funds (hereinafter the "Loan"), to DBI Coinvestment JV Vb, LLC, a Delaware limited liability company ("Borrower"), in the amount of Three Million Seventy Six Thousand and No/100 Dollars ($3,076,000.00) pursuant to that certain Promissory Note (the "Note"), Credit Agreement (the "Credit Agreement") and other Loan Documents (as defined in the Credit Agreement), all of even date herewith by and between Lender and Borrower, Guarantor agrees as follows:

1.      Guarantor hereby unconditionally guarantees to Lender and to each holder from time to time of the Note that all sums stated in the Note to be payable by Borrower will be promptly paid as due and payable (whether at the time of payment of any interest or principal amount or at maturity or at any date fixed for prepayment or by acceleration thereof or otherwise) in accordance with the provisions thereof, and that Borrower will perform and observe each and every covenant, agreement, term and condition in the Credit Agreement or any other Loan Documents to be performed or observed by Borrower. This Guaranty shall be irrevocable, and in all events shall be unconditional and absolute, and if for any reason any such sums, or any part thereof, shall not be paid promptly when due, Guarantor will immediately pay the same to the person entitled thereto pursuant to and in accordance with the provisions of the Note and the Credit Agreement, regardless of any defenses or rights of set-off or counterclaim which Borrower may have or assert, regardless of whether Lender shall have taken any steps to enforce any rights against Borrower or any other person to collect such sum, or any part thereof, and regardless of any other condition or contingency. Guarantor also agrees to pay to such person such further amount as shall be sufficient to cover the cost and expense of collecting such sums, or part thereof, or of otherwise enforcing this Guaranty, including, in any case, reasonable compensation to its attorneys for all services rendered in that connection. Upon Borrower's failure to perform or observe any covenant, agreement, term or condition in the Note, the Credit Agreement or any other Loan Document to be performed or observed by Borrower, Guarantor will promptly perform and observe the same or cause the same promptly to be performed or observed.

2.      The obligations of Guarantor hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense, and shall remain in full force and effect without regard to, and the obligations of Guarantor hereunder shall not be released, discharged or terminated or in any other way affected or impaired by, any circumstance or condition, whether or not Guarantor shall have notice or knowledge thereof, including, without limitation (a) any amendment or modification of or addition or supplement to the Note, the Credit Agreement or any other Loan Document; (b) any compromise, release, consent, extension, indulgence or other action or inaction in respect of the Note, the Credit Agreement or any other Loan Document; (c) any default by Borrower under, or any invalidity or unenforceability of, or any irregularity or any defect in the Note, the Credit Agreement or any other Loan Document; (d) any

exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Guaranty, the Note, the Credit Agreement or any other Loan Document; (e) any assignment or transfer of the assets of Borrower to, or any consolidation or merger of Borrower with or into any other person or entity, or any disposition by Guarantor of any interest in Borrower; (f) any bankruptcy, insolvency, reorganization, arrangement, adjustment, composition, liquidation or similar proceeding involving or affecting Borrower; (g) any partial prepayment, assignment or transfer of the Note; (h) any limitation of Borrower' liability which may now or hereafter be imposed by any statute, regulation or rule of law, or any invalidity or unenforceability, in whole or in part, of any of the terms of the Note; or (i) any other circumstances whatsoever.

3.    Guarantor unconditionally waives any right Guarantor may have to (a) all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of any holder of the Note against Guarantor, including, without limitation, notice to Borrower of default, presentment to and demand of payment from Borrower and protest for nonpayment or dishonor, (b) require Lender to proceed against Borrower, (c) require Lender to proceed against or exhaust any security granted by Borrower, or (d) require Lender to pursue any other remedy within the power of Lender, and Guarantor agrees that all of Guarantor's obligations under this Guaranty are independent of the obligations of Borrower and that a separate action may be brought against Guarantor whether or not an action is commenced against Borrower.

4.    Guarantor shall pay all fees (including reasonable attorneys' fees and costs), costs and expenses, of any nature whatsoever, including but not limited to costs, fees and expenses incurred in connection with appellate, collection and bankruptcy proceedings, incurred by Lender or any holder of the Note in connection with enforcing this Guaranty or with any transaction referred to herein. If any term of this Guaranty or any application thereof shall be invalid or unenforceable, the remainder of this Guaranty and any other application of such term shall not be affected thereby.

5.    LENDER AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY.

6.    In the event that for any reason whatsoever Borrower are now or hereafter become indebted to Guarantor, Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien and in all other respects to all obligations of Borrower to Lender which are covered by this Guaranty, and that Guarantor, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, shall not be entitled to enforce or receive payment thereof until all sums then due and owing to Lender shall have been paid in full. If, during any period of default by Borrower under the Note, the Credit Agreement or any other Loan Document, any payment shall have been made to Guarantor by Borrower on any said indebtedness during any time that there are obligations outstanding from Borrower to Lender which are covered by this Guaranty, Guarantor shall hold in trust all such

payments for the benefit of Lender and shall make said payments to Lender to be credited and applied against obligations of Borrower to Lender, whether matured or unmatured, in accordance with the discretion of Lender.

1.    If at any time all or any part of any payment theretofore applied by Lender to any obligations hereby guaranteed is or must be rescinded or returned by Lender for any reason whatsoever (including without limitation the insolvency, bankruptcy or reorganization of Borrower), such indebtedness shall for the purpose of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence notwithstanding such application by Lender, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such indebtedness as though such application by Lender had not been made.

2.    This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

3.    This Guaranty shall be construed and enforced in accordance with and governed by the laws of the State of Florida, without reference to the choice of laws rules of any jurisdiction.

Guarantor has executed this Guaranty as of the date first above written.


_____
Gregory E. Palmer

STATE OF New Hampshire
COUNTY OF Rockingham

The foregoing instrument was acknowledged before me this 19 day of August, 2011, by Gregory E. Palmer. He [ ] is personally known to me or [✓] produced Not valid lic # _____ as identification.
08PKG T0311

_____
Notary Public, State of _____

_____
Notary's Printed Name PAMELA F. WELLINGTON
My Commission Expires March 4, 201_

Notary Public - New Hampshire
My Commission Expires March 4, 201_

3